JOHN G. CALLAN *v.* STATE OF MARYLAND.

CHARLES F. MULES *v.* STATE OF MARYLAND.

WALTER STIERHOFF *v.* STATE OF MARYLAND.

[Nos. 69-72, October Term, 1928.]

*Decided January 17th, 1929.*

The causes were argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John Philip Hill,* with whom was *Paul B. Mules* on the brief, for the appellants.

*Herbert Levy, Assistant Attorney General,* and *William H. Maynard, Assistant State's Attorney for Baltimore City,* with whom were *Thomas H. Robinson, Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *Hilary W. Gans, Assistant State's Attorney for Baltimore City,* on the brief, for the State.

DIGGES, J., delivered the opinion of the Court.

This record contains four appeals from convictions and sentences imposed by the Criminal Court of Baltimore City. The appellants, Callan, Mules and Stierhoff, were each indicted for violation of section 483 of article 27 of the Code, and a fourth indictment was returned against Callan for violation of section 485 of article 27. There was a demurrer interposed to the last-mentioned indictment, which was overruled. The record contains eighteen exceptions. Section 483, under the sub-title "Sabbath Breaking," provides: "No person whatsoever shall work or do any bodily labor on the Lord's day, commonly called Sunday; and no person having children or servants shall command, or wittingly or willingly suffer any of them to do any manner of work or labor on the Lord's day (works of necessity and charity always excepted), nor shall suffer or permit any children or servants to profane the Lord's day by gaming, fishing, fowling, hunting or unlawful pastime or recreation; and every person transgressing this section and being thereof convicted before a justice of the peace shall forfeit five dollars, to be applied to the use of the county." The four cases were heard together before a jury.

We will first take up the three cases charging a violation of the section referred to, prohibiting work or labor on the Sabbath. It is contended by the appellants in these three cases that the grand jury of Baltimore City had no authority to indict them for the offense set out in the indictments, for the reason that the statute provides that "every person transgressing this section and being thereof convicted before a justice of the peace shall forfeit five dollars, to be applied to the use of the county." It is argued, first, that because under the terms of the statute the fine to be imposed upon conviction is to be applied to the use of the county, it makes the statute inapplicable to Baltimore City; and, second, that the justices of the peace are given exclusive jurisdiction to try persons offending against the provisions of this section.

The answer to the first of these arguments is contained in section 14 of article 1 of the Code, which provides: "The

word county shall be construed to include the city of Baltimore, unless such construction would be unreasonable." In the present case it is not only reasonable to construe the word county to include Baltimore City, but it would be most unreasonable to hold that this statute, prohibiting labor on Sunday, should be held not to apply to Baltimore City because in the statute the fine to be imposed is to be applied to the county.

In respect to the second argument, the statute under consideration clearly provides that the justice of the peace shall have jurisdiction, or that the traverser shall be fined after being convicted before a justice of the peace, and, if this were the only statute on the subject, there might be force in the position taken; but section 632 of article 4 of the Public Local Laws, title "City of Baltimore" (Ed. 1927), in speaking of the police justices of said city, provides: "Each of the said justices of the peace shall have power * * * to hear, try and determine the cases of all persons brought before him for Sunday gaming, Sunday work, Sunday sales or Sabbath-breaking; * * * But it shall be the duty of the said justice before proceeding to hear, try and determine any of the charges aforesaid, to inform the party or parties charged therewith of his or their respective rights to a jury trial; and if a jury trial be prayed by the party or parties charged, or if the state's attorney for said city shall before trial for the alleged offense pray a jury trial on the part of the state, the justice shall forthwith commit or hold the said party or parties to bail for trial in the Criminal Court of Baltimore, and endorse on the commitment or recognizance the fact of a jury trial having been prayed"; and section 634 of the same article provides: "When a person charged with any offence referred to in this subdivision of this article, or the state's attorney, shall pray a jury trial, the justice of the peace shall, in addition to his duties prescribed in section 632, endorse upon said commitment or recognizance the names and residences of the witnesses for the prosecution; and such commitment or recognizance so

endorsed shall be returned forthwith to the clerk of the said Criminal Court of Baltimore."

What appears to have been done in the cases now before us is that upon their apprehension they were taken before one of the police justices of Baltimore City and prayed a jury trial, whereupon the justice took their recognizances and endorsed on each the fact that a jury trial was prayed, and the recognizances were sent to the clerk of the criminal court. The statutes applicable to Baltimore City just recited make no further provision as to the procedure in such cases. Section 12 of article 52 of the Code of Public General Laws, which is applicable to the state at large, with the exception of the City of Baltimore, Talbot, Harford, Montgomery and Frederick Counties, provides, under a similar situation, that when the party is taken before a justice of the peace and is informed of his right to a jury trial, and prays a jury trial, he is committed or recognized to appear at the next term of court, and the justice of the peace is required to transmit the papers, including the recognizance, to the clerk of the circuit court for the county, whereupon the clerk of the court places the case upon the appeal docket, and it is then tried in said court on the information or warrant. It therefore appears that in the counties, excluding the excepted ones and Baltimore City, the grand jury would have no authority to present and indict for the offense charged in the warrant before the magistrate, but that the traverser would be tried either before a petit jury or the court sitting as a jury, on the warrant or information. However, this general statute, as stated, not being applicable to Baltimore City, and the sections referred to, of article 4 of the Code of Public Local Laws, title "City of Baltimore," not requiring that the justice of the peace send any warrant or information to the criminal court, nor providing that on the praying of a jury trial such a case in the criminal court should be tried on the warrant or information, in cases like the present, arising in Baltimore City, the traverser, upon praying a jury trial, is entitled to a jury trial according to the law of the land, which means that he is entitled to such a jury

464

trial as he would be entitled to had his case originated in that court, which carries with it the obligation that he be presented and indicted by a grand jury, as well as tried by a petit jury, if he so elects.

In *Danner v. State*, 89 Md. 227, this court quoted with approval from the case of *Jones v. Robbins*, 8 Gray (Mass.), 349, wherein Justice Shaw said: "The right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury in cases of high offence, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty." This court then continued: "In *Callan v. Wilson*, 127 U. S. 540, the court was inquiring into the right of the defendant to a trial by jury, in a case where a party was tried before a police court, without a jury, but with a right of appeal to a tribunal having a jury and in pronouncing upon the clauses of the Federal Constitution having relation to the subject, said: 'The guarantee of an impartial jury to the accused * * * secures to him the right to enjoy that mode of trial from the first moment, and in whatever court he is put on trial.' *Ex parte Wilson*, 114 U. S. 417-429; *Proffatt on Jury Trial*, secs. 97, 98."

There is a large number of cases wherein it is competent for the Legislature to provide for the trial of offenders before a justice of the peace, in which the constitutional guarantees of a jury trial could not be invoked. However, even in such cases, the traverser is ordinarily permitted to plead a jury trial at the hearing before the justice of the peace, and in those cases where he is not as a matter of constitutional right entitled to a jury trial, in granting him the privilege of praying a jury trial the statute may restrict the exercise of the right of jury trial by providing a procedure which does not include presentment and indictment by a grand jury, but requires that the offender be tried on the information or warrant. It seems clear that, where the right of jury

trial is accorded in minor offenses such as this, and the procedure is not defined by the statute, before the party could be tried after praying a jury trial it would be necessary that he be presented and indicted by a grand jury. In other words, when the statute permits the prayer for a jury trial, it accords to the traverser the benefit of the entire jury system, which includes the requirement not only that his guilt or innocence be passed upon by a petit jury, but that before he be put on trial he be presented and indicted by a grand jury. The traversers in this case were tried in the only way in which they could have been brought to trial under the law, having prayed a jury trial. They were accorded all of the safeguards which are thrown around criminal trials of capital and felonious cases. Under the statute applicable to most of the counties, this would not have been done, and would not have been necessary to be done. See also *Graham v. Gaither,* 140 Md. 346.

The remaining case is the indictment against Callan for a violation of section 485 of article 27 of the Code, which reads: "It shall not be lawful to keep open or use any dancing saloon, opera house, ten pin alley, barber saloon or ball alley within this State on the Sabbath day, commonly called Sunday; and any person or persons, or body politic or corporate, who shall violate any provision of this section, or cause or knowingly permit the same to be violated by a person or persons in his, her or its employ shall be liable to indictment in any court of this State having criminal jurisdiction, and upon conviction thereof shall be fined a sum not less than fifty dollars nor more than one hundred dollars." The indictment in that case is in the words of the statute, and charges that John G. Callan "on the fifth day of February, in the year of our Lord nineteen hundred and twenty-eight, the same day in the year aforesaid, being the Sabbath Day, commonly called Sunday, at the city aforesaid, unlawfully did keep open a certain opera house within the State of Maryland, to wit, the Harford Moving Picture Parlor, situate and being at premises commonly known as number twenty-six hundred and twenty Harford Avenue, in the City

of Baltimore, contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State." The second count of the indictment charges that the traverser Callan "on the said day in the said year, the same day in the said year being the Sabbath Day, commonly called Sunday, at the city aforesaid, unlawfully did use a certain opera house within the State of Maryland, to wit, the Harford Moving Picture Parlor situate and being at premises commonly known as number twenty-six hundred and twenty Harford Avenue, in the City of Baltimore, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State." The demurrer to this indictment, we think, was properly overruled. As stated, the indictment is in the words of the statute defining the offense, and charges the traverser with keeping open an opera house, and using an opera house. *Weller v. State,* 150 Md. 278. The words "Harford Moving Picture Parlor" are used in the indictment, but only for the purpose of describing the place which is alleged to be an opera house; in other words, as a proper name to designate and identify the building which the jury was required to find to be an opera house. The indictment not being subject to demurrer, the question of whether or not the evidence showed that what the defendant did was keeping an opera house in violation of the statute, was a question for the jury, and their decision on this point is not reviewable in this court.

There are seventeen exceptions to the rulings of the court upon the evidence, and as to these the appellants contend:

First, that the court erred in not allowing them to show that the construction placed upon the law by those charged with its enforcement was such as to permit without molestation in Baltimore City on Sunday moving picture shows in churches, operas in the Lyric Theater, and basket-ball games in public places, for which either admission was directly charged or at which a collection was taken up. We find no error in these rulings. The guilt or innocence of the

traversers here could not be made to depend upon the question of whether other parties had been guilty of similar acts without prosecution or conviction, any more than the fact that persons engaged in similar occupations had been convicted would be proper evidence for the jury to consider in order to convict the traversers here. Neither can a criminal statute be repealed by the failure of authorities to prosecute and convict for its violation. Ninety-nine grand juries might refuse to indict for the violation of a statute, and the hundredth might take the opposite view and indict. It would clearly be not admissible in the trial of the case to allow evidence of the failure of the ninety-nine juries to indict.

Second, that the traversers were not permitted to qualify and produce a witness expert in the management of opera houses, and to have this expert witness testify to the jury as to what is an opera house. The court properly refused to allow this testimony. The juries in this state are judges of the law and fact in criminal cases, and it was their province to determine the mixed question of law and fact involved in the proper interpretation of the term "opera house." It therefore became the duty of the jury to determine whether or not the evidence convinced them beyond reasonable doubt that the Harford Moving Picture Parlor was an opera house within the meaning of that term as used by the Legislature. It was for the jury to say what the Legislature, in using the language employed in this statute, intended to prevent; and having determined the legislative intent, they were then required to say whether or not the act of Callan was a violation of the statute. Whether or not the Legislature meant to include a moving picture show in the term "opera house" was for the jury to determine, and they were as well qualified to do that as a so-called expert witness. If experts are permitted in criminal cases to say whether or not in their opinion the alleged offense has been committed, they would be usurping the very function which belongs to the jury; and it is well established that opinions of witnesses upon matters of law, or where the question under consideration can be decided by ordinary experience

and knowledge possessed by a person of average intelligence, are not admissible; the jury being competent to draw proper inferences from the facts without hearing the opinion of experts. The proper procedure in such cases is to present the facts, and the conclusions or inferences to be drawn from these facts are for the jury. *Balto. & O. R. Co. v. Rudy,* 118 Md. 58; *Jones v. Dugan,* 124 Md. 353; *Cecil Paper Co. v. Nesbitt,* 117 Md. 69; *Willie v. State,* 153 Md. 613.

The eighteenth and final exception was to certain remarks made by the assistant state's attorney during the course of his argument to the jury, to the effect "that Mr. Callan himself has gone to the Legislature, and asked that moving picture houses be excluded from the terms of the act, and the Legislature passed an act excluding moving pictures from the purview of the act, which was later declared unconstitutional. * * * Gentlemen of the jury, in 1920 our Court of Appeals at Annapolis was called upon to interpret an act which was passed by the Legislature of Maryland while my friend, Mr. Callan, was down there." This was objected to, and objection overruled. It was then stated by Mr. Hill, counsel for Callan: "He was not a member of the House, and that is why I objected to your statement. Mr. Callan was not a member of the House, and it cannot come in." "The Court: Leave Mr. Callan out. This is clearly an erroneous statement and you gentlemen must not be in any manner affected by it." As soon as the court was informed that there was an error in the statement of the assistant state's attorney, he promptly directed the jury to disregard what had been said, and not in any manner to be affected by it. This was all that the court was called upon to do, and ordinarily there is no reversible error in such remarks by counsel in addressing the jury, when the jury is directed by the court to disregard the statement of counsel. This at most was a remark of counsel outside of the testimony, which was promptly rebuked, and what was said by the Supreme Court in *Dunlop v. United States,* 165 U. S. 486, and cited with approval by this court in *Toomer v. State,* 112 Md. 293, and *Dunn v. State,* 140 Md. 163, is applicable here:

"If every remark made by counsel outside of the testimony were ground for reversal, comparatively few verdicts would stand, since in the ardor of advocacy and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." To like effect see *Freud v. State*, 129 Md. 646; *Damm v. State*, 128 Md. 670; *Meno v. State*, 117 Md. 441. In the late case of *Newton v. State*, 147 Md. 92, referring to similar language used by the state's attorney, Judge Offutt, speaking for the court, said: "That these remarks on the part of the state's attorney were exceedingly improper and calculated to unfairly prejudice the jury against the defendant, is scarcely a matter of argument, and the court should have warned the jury to disregard them. But as the remarks were upon motion stricken out, and as the traverser at the time asked for no other action on the part of the court, we do not regard its failure to so warn the jury as reversible error."

Finding no error, the judgments in each case must be affirmed.

> *Judgment in No. 69 affirmed, with costs; judgment in No. 70 affirmed, with costs; judgment in No. 71 affirmed, with costs; judgment in No. 72 affirmed, with costs.*