GRIFFIN ET AL. *v.* STATE

GREENE ET AL. *v.* STATE

(Two Appeals in One Record)

[No. 248, September Term, 1960.]

*Decided June 8, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Charles T. Duncan,* with whom were *Joseph H. Sharlitt, Claude B. Kahn* and *Lee M. Hydeman* on the brief, for the appellants.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Leonard T. Kardy, State's Attorney for Montgomery County,* and *James S. Mc-Auliffe, Jr., Assistant State's Attorney,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

This is a consolidated appeal from ten judgments and sentences to pay fines of one hundred dollars each, entered by the Circuit Court for Montgomery County after separate trials, each involving five defendants, on warrants issued for wanton trespass upon private property in violation of Code (1957), Art. 27, § 577.

The first group of defendants, William L. Griffin, Marvous Saunders, Michael Proctor, Cecil T. Washington, Jr., and Gwendolyn Greene (hereinafter called "the Griffin appellants" or "the Griffins"), all of whom are Negroes, were arrested and charged with criminal trespass on June 30, 1960, on property owned by Rekab, Inc., and operated by

Kebar, Inc., as the Glen Echo Amusement Park (Glen Echo or park). The second group of defendants, Cornelia A. Greene, Helene D. Wilson, Martin A. Schain, Ronyl J. Stewart and Janet A. Lewis (hereinafter called "the Greene appellants" or "the Greenes"), two of whom are Caucasians, were arrested on July 2, 1960, also in Glen Echo, and were also charged with criminal trespass.

The Griffins were a part of a group of thirty-five to forty young colored students who gathered at the entrance to Glen Echo to protest "the segregation policy that we thought might exist out there." The students were equipped with signs indicating their disapproval of the admission policy of the park operator, and a picket line was formed to further implement the protest. After about an hour of picketing, the five Griffins left the larger group, entered the park and crossed over it to the carrousel. These appellants had tickets (previously purchased for them by a white person) which the park attendant refused to honor. At the time of this incident, Rekab and Kebar had a "protection" contract with the National Detective Agency (agency), one of whose employees, Lt. Francis J. Collins (park officer), who is also a special deputy sheriff for Montgomery County, told the Griffins that they were not welcome in the park and asked them to leave. They refused, and after an interval during which the park officer conferred with Leonard Woronoff (park manager), the appellants were advised by the park officer that they were under arrest. They were taken to an office on the park grounds and then to Bethesda, where the trespass warrants were sworn out. At the time the arrests were made, the park officer had on the uniform of the agency, and he testified that he arrested the appellants under the established policy of Kebar of not allowing Negroes in the park. There was no testimony to indicate that any of the Griffins were disorderly in any manner, and it seems to be conceded that the park officer gave them ample time to heed the warning to leave the park had they wanted to do so.

The Greene appellants entered the park three days after the first incident and crossed over it and into a restaurant operated by the B & B Industrial Catering Service, Inc., un-

der an agreement between Kebar and B & B. These appellants asked for service at the counter, were refused, and were advised by the park officer that they were not welcome and were ordered to leave. They refused to comply by turning their backs on him and he placed them under arrest for trespassing. Abram Baker (president of both Rekab and Kebar) testified that it was the policy of the park owner and operator to exclude Negroes and that the park officer had been instructed to ask Negro customers to leave, and that if they did not, the officer had orders to arrest them. There was no evidence to show that the operator of the restaurant had told the Greenes they were not welcome or to leave; nor was there any evidence that the park officer was an agent of the restaurant operator. And while a prior formal agreement [1] covering the 1957 and 1958 seasons had provided that the restaurant operator was subject to and should comply with the rules and regulations concerning the persons to be admitted to the park and that Kebar had reserved the right to enforce them, the letter confirming the agreement for the 1959 and 1960 seasons fixed the rentals for that period and alluded to other matters, but made no reference whatsoever, either directly or indirectly, to the prior formal agreement—though there was testimony, admitted over objection, to the effect that the letter was intended as a renewal of the prior lease—and was silent as to a reservation by Kebar of the right to police the restaurant premises during the 1959 and 1960 seasons.

On this set of facts, both groups of appellants make the same contentions on this appeal: (i) that the requirements for conviction under Art. 27, § 577, were not met; and (ii) that the arrest and conviction of the appellants constituted an exercise of the power of the State of Maryland in enforcing a policy of racial segregation in violation of the Fourteenth Amendment to the Constitution of the United States.

---

1. The document was called an "agreement"; the operator of the restaurant was referred to therein as a "concessionaire" and was described in the agreement as a "licensee" and not a "lessee"; yet the agreement called for the payment of rent (payable biannually) as well as a portion of the gross receipts and a part of the county licensing fees and certain other items of expense.

Trespass to private property is not a crime at common law unless it is accompanied by, or tends to create, a breach of the peace. See *Krauss v. State*, 216 Md. 369, 140 A. 2d 653 (1958), and the authorities therein cited. And it was not until the enactment of § 21A of Art. 27 (as a part of the Code of 1888) by Chapter 66 of the Acts of 1900 that a "wilful trespass" (see *House Journal* for 1900, p. 322) upon private property was made a misdemeanor. That statute, which has remained unchanged in phraseology since it was originally enacted, is now § 577 of Art. 27 (in the Code of 1957), entitled "wanton trespass upon private land," and reads in pertinent part:

> "Any person * * * who shall enter upon or cross over the land, premises or private property of any person * * * after having been duly notified by the owner or his agent not to do so shall be deemed guilty of a misdemeanor * * *; provided [however] that nothing in this section shall be construed to include * * * the entry upon or crossing over any land when such entry or crossing is done under a bona fide claim of right or ownership * * *, it being the intention of this section only to prohibit any wanton trespass upon the private land of others."

*The Case Against The Griffin Appellants*

(i)

The claim that the requirements for conviction were not met is threefold: (a) that due notice not to enter upon or cross over the land in question was not given to the appellants by the owner or its agent; (b) that the action of the appellants in doing what they did was not wanton within the meaning of the statute; and (c) that what the appellants did was done under a bona fide claim of right.

There was due notice so far as the Griffins were concerned. Since there was evidence that these appellants had gathered at the entrance of Glen Echo to protest the segregation policy they thought existed there, it would not be unreasonable to infer that they had received actual notice not to trespass on the park premises even though it had not been given by the

operator of the park or its agent. But, even if we assume that the Griffins had not previously had the notice contemplated by the statute which was required to make their entry and crossing unlawful, the record is clear that after they had seated themselves on the carrousel, these appellants were not only told they were unwelcome, but were then and there clearly notified by the agent of the operator of the park to leave and deliberately chose to stay. That notice was *due* notice to these appellants to depart from the park premises forthwith, and their refusal to do so when requested constituted an unlawful trespass under the statute. Having been duly notified to leave, these appellants had no right to remain on the premises and their refusal to withdraw was a clear violation of the statute under the circumstances even though the original entry and crossing over the premises had not been unlawful. *State v. Fox,* 118 S. E. 2d 58 (N. C. 1961). Cf. *Commonwealth v. Richardson,* 48 N. E. 2d 678 (Mass. 1943). Words such as "enter upon" or "cross over" as used in § 577, *supra,* have been held to be synonymous with the word "trespass." See *State v. Avent,* 118 S. E. 2d 47 (N. C. 1961).

The trespass was wanton within the meaning of the statute. Since the evidence supports a reasonable inference that the Griffins entered the park premises and crossed over it well knowing that they were violating the property rights of another, their conduct in so doing was clearly wanton. Although there are almost as many legal definitions of the word "wanton" as there are appellate courts, we think the Maryland definition, which is in line with the general definition of the word in other jurisdictions, is as good as any. In *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A. 2d 813 (1948), as well as in *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 20 A. 2d 485 (1941), it was said that the word "wanton" means "characterized by extreme recklessness and utter disregard for the rights of others." We see no reason why the refusal of these appellants to leave the premises after having been requested to do so was not wanton in that their conduct was in "utter disregard for the rights of others." Even though their remaining may have been no more than an aggravating incident,

it was nevertheless wanton within the meaning of this criminal trespass statute. See *Ex Parte Birmingham Realty Co.,* 63 So. 67 (Ala. 1913).

Since it was admitted that the carrousel tickets were obtained surreptitiously in an attempt to "integrate" the amusement park, we think the claim that these appellants had taken seats on the carrousel under a bona fide claim of right is without merit. While the statute specifically excludes the "entry upon or crossing over" privately owned property by a person having a license or permission to do so, these appellants do not come within the statutory exception. In a case such as this where the operator of the amusement park—who had a right to contract only with those persons it chose to deal with —had not knowingly sold carrousel tickets to these appellants, it is apparent that they had no bona fide claim of right to a ride thereon, and, absent a valid right, the refusal to accept the tickets was not a violation of any legal right of these appellants.

(ii)

We come now to the consideration of the second contention of the Griffin appellants that their arrest and conviction constituted an unconstitutional exercise of state power to enforce racial segregation. We do not agree. It is true, of course, that the park officer—in addition to being an employee of the detective agency then under contract to protect and enforce, among other things, the lawful racial segregation policy of the operator of the amusement park—was also a special deputy sheriff, but that dual capacity did not alter his status as an agent or employee of the operator of the park. As a special deputy sheriff, though he was appointed by the county sheriff on the application of the operator of the park "for duty in connection with the property" of such operator, he was paid wholly by the person on whose account the appointment was made and his power and authority as a special deputy was limited to the area of the amusement park. See Montgomery County Code (1955), § 2-91. As we see it,. our decision in *Drews v. State,* 224 Md. 186, 167 A. 2d 341 (1961), is controlling here. The appellants in that case—in

the course of participating in a protest against the racial segregation policy of the owner of an amusement park—were arrested for disorderly conduct committed in the presence of regular Baltimore County police who had been called to eject them from the park. Under similar circumstances, the appellants in this case—in the progress of an invasion of another amusement park as a protest against the lawful segregation policy of the operator of the park—were arrested for criminal trespass committed in the presence of a special deputy sheriff of Montgomery County (who was also the agent of the park operator) after they had been duly notified to leave but refused to do so. It follows—since the offense for which these appellants were arrested was a misdemeanor committed in the presence of the park officer who had a right to arrest them, either in his private capacity as an agent or employee of the operator of the park or in his limited capacity as a special deputy sheriff in the amusement park (see Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 149)—the arrest of these appellants for a criminal trespass in this manner was no more than if a regular police officer had been called upon to make the arrest for a crime committed in his presence, as was done in the *Drews* case. As we see it, the arrest and conviction of these appellants for a criminal trespass as a result of the enforcement by the operator of the park of its lawful policy of segregation, did not constitute such action as may fairly be said to be that of the State. The action in this case, as in *Drews,* was also "one step removed from State enforcement of a policy of segregation and violated no constitutional right of appellants."

The judgments as to the Griffin appellants will be affirmed.

### The Case Against The Greene Appellants

There is not enough in the record to show that the Greenes were duly notified to leave the restaurant by the only persons who were authorized by the statute to give notice. The record discloses that these appellants entered the park and crossed over it into the restaurant on the premises, but there was no evidence that the operator or lessee of the restaurant or an agent of his either advised these appellants that they were

unwelcome or warned them to leave. There was evidence that the park officer had ordered these appellants to leave, but it is not shown that he was authorized to do so by the lessee, and a new written agreement for the 1959 and 1960 seasons having been substituted for the former agreement covering the 1957 and 1958 seasons, the state of the record is such that it is not clear that the lessor had reserved the right to continue policing the leased premises as had been the case during the 1957-1958 period. Under these circumstances, it appears that the notice given by the park officer was ineffective. There is little doubt that these appellants must have known of the racial segregation policy of the operator of the park and that they were not welcome anywhere therein, but where notice for a definite purpose is required, as was the case here, knowledge is not an acceptable notice where the required notification is incident to the infliction of a criminal penalty. 1 Merrill, *Notice,* § 509. See also *Woodruff v. State,* 54 So. 240 (Ala. 1911), where it was held (at p. 240) that "[i]n order to constitute the offense of trespass after warning, it is necessary to show that the warning was given by the person in possession or his duly authorized agent." And see *Payne v. State,* 12 S. W. 2d 528 (Tenn. 1928), [a court cannot convict a person of a crime upon notice different from that expressly provided in the statute]. Since the notice to the Greene appellants was inadequate they should not have been convicted of trespassing on private property, and the judgments as to them must be reversed.

> *The judgments against the Griffin appellants are affirmed; the judgments against the Greene appellants are reversed; the Griffin appellants shall pay one-half of the costs; and Montgomery County shall pay the other one-half.*