In the Matter of CROMWELL and WHITE

[No. 145, September Term, 1963.]

410

*Decided October 8, 1963.*

The cause was argued before the full Court.

*Tucker R. Dearing* and *Juanita Jackson Mitchell,* with whom were *Jack Greenberg* and *Derrick A. Bell, Jr.,* on the brief, for the appellants.

*Robert C. Murphy, Deputy Attorney General,* with whom were *Russell R. Reno, Jr., Assistant Attorney General,* and *C. Burnam Mace, State's Attorney for Dorchester County,* on the brief, for the State of Maryland.

HENDERSON, J., delivered the opinion of the Court.

These cases came before us at an earlier stage, on petitions to release the appellants from the custody of the training schools to which they had been committed as juvenile delinquents, pending the hearing of these appeals. We declined to do so, holding that the temporary commitments violated no constitutional principle, and that the trial court was not clearly wrong in declining to release these children to the custody of their mothers under the circumstances of the case. We took judicial notice of the fact that the Governor had sent the State Militia to Cambridge to prevent threatened outbreaks of violence. We pointed out that the trial court may well have felt that it was in the best interests of the children that they be removed from the scene of danger, where they would be safe from the physical injuries they might suffer if they remained at home and persisted in their past course of participating in protests against racial segregation that were not always peaceful or law-abiding. *Ex parte Cromwell,* 232 Md. 305, 309.

We advanced these appeals for hearing, and the case was heard on a stipulated statement of facts in lieu of a transcript of proceedings. We take judicial notice of the facts that the militia is still in Cambridge and that a Charter Amendment designed to clear the air, by forbidding discrimination in restaurants and certain other places of public accommodation, was defeated by popular vote on October 1, 1963.

The appellants, Dwight Cromwell and Dinez White, contend that they were denied their constitutional rights under the Fourteenth Amendment to the Federal Constitution, in that the court found them to be juvenile delinquents simply because of their participation in civil rights demonstrations. They argue that in picketing the Board of Education and in walking down the streets of Cambridge, they were merely exercising a right of free speech and assembly. The other three demonstrations in which they participated were "sit-ins" of privately operated places of public accommodation. They argue that these actions did not constitute unlawful trespass or disturbances of the peace, to justify a conviction either under the State Trespass Law (Code (1957), Art. 27, sec. 577), or the State Disorderly Conduct Law (Code (1957), Art. 27, sec. 123) or the local law of Dorchester County, P.L.L. (1961 Ed.) Art. 10, sec. 91 (Disorderly Conduct).

The Juvenile Court Act (Code (1957), Art. 26, sec. 52 (e)) provides:

"*Delinquent child*' means a child (1) Who violates any law or ordinance, or who commits any act which, if committed by an adult, would be a crime not punishable by death or life imprisonment; (2) who is incorrigible or ungovernable or habitually disobedient or who is beyond the control of his parents, guardian, custodian or other lawful authority; (3) who is habitually a truant; (4) who without just cause and without the consent of his parents, guardian or other custodian, repeatedly deserts his home or place of abode; (5) who is engaged in any occupation which is in violation of law, or who associates with immoral or vicious persons; or (6) who so deports himself as to injure or endanger the morals of himself or others."

The appellants were each 15 years of age when arrested on charged of disorderly conduct in connection with the "sit-in"

demonstrations. Being of an age where the Juvenile Court has exclusive jurisdiction under Code (1957), Art. 26, sec. 53, in the absence of waiver under sec. 54, they were charged with delinquency in the juvenile court, on petitions assigning as the only reasons therefor, disorderly conduct on three occasions identified by dates in one case, and on four occasions in the other. At the hearing they were represented by counsel.

In the previous appeal we expressed no opinion as to the validity of the finding of delinquency, stating that the only matter then before us was the propriety of the ruling that the infant petitioners be lodged in the training schools pending the determination of these appeals. The question reserved is now before us. We have no difficulty in holding that there was evidence before the trial court to support a finding that each child had committed acts, which if committed by an adult, would have constituted the crimes of trespass and disorderly conduct. We refer particularly to an incident mentioned in our prior opinion, where they entered the Dorset Theatre without tickets while a show was in progress, lay on the floor, used profane language and refused to leave until arrested. If we assume, without deciding, that children have the same rights of protest enjoyed by adults, such conduct, we think would justify a conviction in the case of adults. See *Bell v. State,* 227 Md. 302, 305, and cases there cited. (The Supreme Court granted certiorari in this case, and in the earlier case of *Griffin v. State,* 225 Md. 422, and these cases will be argued, or reargued in the current term.) Under the existing law, unless and until it be declared unconstitutional by the Supreme Court of the United States, we find no violation of the Fourteenth Amendment in the assertion of a private proprietor's right to choose his customers, or to eject those who are disorderly or enter without paying a charge imposed upon all patrons.

But the difficulty in the case at bar is that a mere finding of a basis for delinquency is not enough. Code (1957), Art. 26, sec. 54, provides that when the jurisdiction of the Juvenile Court is invoked the "judge shall then determine whether or not such child comes within any of the aforesaid terms *and* is, *by reason thereof, in need of care or treatment* within the provisions and intent of this subtitle." Sec. 61 provides that the case shall be

dismissed if the "judge determines that the child is not within the jurisdiction of the court *or* that the child is not in need of care or treatment * * *." (Italics supplied.) Such need in the case at bar arises out of the threatened physical harm to the appellants, if they should persist in participating in public demonstrations which might lead to violence. If public demonstrations were discontinued for any reason, or if some guaranty were offered that the appellants would be effectively prevented by their parents or guardians from participating, we think it is clear that there would be no need for other or further care or treatment on that score.

While we hold that the disorderly conduct shown was sufficient to support the finding of delinquency, the conduct of these appellants, standing alone, was not so fundamentally wrong as to require permanent treatment, as distinguished from temporary custodial care. In the main, the demonstrations in which they participated were conducted by adults who, although disorderly in some instances, were not engaged in acts involving moral turpitude. It appears that the adult demonstrators were either dismissed, when charged with disorderly conduct, or that minimum fines were imposed. Incarceration of these children beyond the immediate need for their protection could hardly be supported.

The State perhaps recognizing the weakness of the case for further detention on this score, seeks to bolster it by arguing that the appellants were shown by the evidence to be incorrigible or beyond the control of their parents or others in lawful authority, under sec. 52 (e) (2), or truant, under (3). It should be noted that the evidence on these points was admitted prior to any adjudication of delinquency. It should further be noted that no petitions had been filed on these grounds prior to the demonstrations. The appellants argue that all of this evidence was improperly admitted, over objection.

In the first place, as we have noted above, there was no assignment of (2) or (3) as a reason for the charge of delinquency. If the State wished to rely on anything other than the disorderly conduct on stated occasions, it would have been easy to do so, and perhaps would have enabled counsel for the respondents to summon witnesses or otherwise prepare his case.

Maryland Rules 903 and 915 indicate that reasons relied on should be fully assigned, if only to prevent surprise.

Moreover, the State put in evidence, over objection, summaries of reports by school principals and teachers, that had been gathered by the school superintendent, although the persons making the reports were not present for cross-examination. The original reports were not produced. Not only were some of the statements in these reports highly derogatory, but the statements as a whole were equivocal. At one point the statements as to Dinez speak of an unacceptable behavior pattern, at another of cooperation in the current year. In the case of Dwight, the statements speak at one point of emotional disturbance, at another of marked improvement. In his case there was also a report from the Health Department, that he had been referred "after being suspected" of a serious sexual offense. Yet there was no finding on the point, and nothing but a notation that he kept appointments irregularly. Apart from being hearsay, the report was irrelevant and misleading.

It is quite true, as the State argues, that proceedings in a juvenile court are not criminal in nature. See *Moquin v. State*, 216 Md. 524, and *Ex parte Cromwell, supra*. But the rules of practice and procedure, including the rules of evidence, apply in civil as well as in criminal cases. We find nothing in the statute to the contrary, except the language of sec. 60, that "[h]earings shall be conducted in an informal manner * * *." The case of *McDonough v. Director*, 229 Md. 626, 634, relied on by the State, is distinguishable because the statute dealing with defective delinquency expressly made the report to the Court by the Patuxent staff admissible, despite the fact that it contained hearsay. See *Schultz v. Director*, 227 Md. 666, 667. If, as some authorities suggest and our own Rules reflect, juvenile proceedings should be conducted without strict regard for the usual court rules, we think there is at least a minimum standard of fairness that must be observed. See 1 Wigmore, *Evidence* (3d ed.), sec. 4d 4, p. 101 et seq; 4 Wharton, *Criminal Law and Procedure* (Anderson), sec. 1477; Paulsen, *Fairness to the Juvenile Offender*, 41 Minn. L. Rev. 547; Allen, *Criminal Justice, Legal Values and the Rehabilitative Ideal*, 50 J. Crim. L., C. and P. S. 226, 231; Annotation 43 A.L.R. 2d

416

1128. We think the introduction of this evidence, without advance notice and in a form that prevented cross-examination and clarification, was prejudicial and unfair. Accordingly, we shall reverse and remand the case for further proceedings, not inconsistent with the views here expressed, in order that the whole matter may be reviewed in the light of the situation now found to exist.

*Decree reversed and case remanded, with costs.*