# GRIFFIN ET AL. *v.* MARYLAND.

No. 6. Argued November 5, 7, 1962.—Restored to the calendar for reargument May 20, 1963.—Reargued October 14–15, 1963.—Decided June 22, 1964.

*Joseph L. Rauh, Jr.* and *Jack Greenberg* argued the cause for petitioners on the reargument. With them on the brief were *John Silard, Daniel H. Pollitt, Joseph H. Sharlitt* and *James M. Nabrit III.* *Mr. Rauh* argued the cause for petitioners on the original argument. With him on the brief were *Messrs. Silard, Sharlitt, Greenberg* and *Nabrit.*

*Robert C. Murphy,* Deputy Attorney General of Maryland, and *Russell R. Reno, Jr.,* Assistant Attorney General, argued the cause for respondent on the reargument. With *Mr. Murphy* on the brief were *Thomas B. Finan,*

Attorney General of Maryland, and *Loring E. Hawes,* Assistant Attorney General. *Mr. Murphy,* then Assistant Attorney General of Maryland, and *Joseph S. Kaufman,* then Deputy Attorney General, argued the cause for respondent on the original argument. With them on the brief was *Mr. Finan.*

*Ralph S. Spritzer,* by special leave of Court, argued the cause for the United States on the reargument, as *amicus curiae,* urging reversal. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Marshall, Louis F. Claiborne, Harold H. Greene, Howard A. Glickstein* and *David Rubin. Mr. Cox,* by special leave of Court, argued the cause for the United States on the original argument, as *amicus curiae,* urging reversal. With him on the brief were *Messrs. Marshall, Claiborne* and *Greene.*

Mr. Chief Justice Warren delivered the opinion of the Court.

Petitioners were convicted of criminal trespass for refusing to leave a privately owned and operated amusement park in the State of Maryland at the command of an employee of the amusement park acting under color of his authority as a deputy sheriff. For the reasons set forth hereinafter we hold that these convictions are violative of the Fourteenth Amendment and must be set aside.

The Glen Echo Amusement Park is located in Montgomery County, Maryland, near Washington, D. C. Though the park through its advertisements sought the patronage of the general public, it was (until recently) the park's policy to exclude Negroes who wished to patronize its facilities. No signs at the park apprised persons of this policy or otherwise indicated that all comers were not welcome. No tickets of admission were required. In protest against the park's policy of segre-

gation a number of whites and Negroes picketed the park on June 30, 1960. The petitioners, five young Negroes, were participating in the protest. Hopeful that the management might change its policy, they entered the park, and encountering no resistance from the park employees, boarded the carousel. They possessed transferrable tickets, previously purchased by others, entitling the holder to ride on the carousel.

At that time the park employed one Collins as a special policeman by arrangement with the National Detective Agency. Although Collins was formally retained and paid by the agency and wore its uniform, he was subject to the control and direction of the park management. Apparently at the request of the park, Collins had been deputized as a sheriff of Montgomery County.[1] He wore, on the outside of his uniform, a deputy sheriff's badge.

When Collins saw the petitioners sitting on the carousel waiting for the ride to begin, he reported their presence to the park manager. The manager told Collins that petitioners were to be arrested for trespassing if they would not leave the park. Collins then went up to the petitioners and told them that it was the park's policy "not to have colored people on the rides, or in the park." He ordered petitioners to leave within five minutes. They declined to do so, pointing out that they had tickets for the carousel. There was no evidence that any of the

---

[1] The Maryland Court of Appeals opinion below stated that Collins was deputized at the request of the park management pursuant to § 2–91 of the Montgomery County Code of 1955 which provides that the sheriff "on application of any corporation or individual, may appoint special deputy sheriffs for duty in connection with the property of . . . such corporation or individual; such special deputy sheriffs to be paid wholly by the corporation or person on whose account their appointments are made. Such special deputy sheriffs . . . shall have the same power and authority as deputy sheriffs possess within the area to which they are appointed and in no other area." 225 Md. 422, 430, 171 A. 2d 717, 721.

petitioners were disorderly. At the end of the five-minute period Collins, as he testified, "went to each defendant and told them that the time was up and that they were under arrest for trespassing." Collins transported the petitioners to the Montgomery County police station. There he filled out a form titled "Application for Warrant by Police Officer." The application stated:

"Francis J. Collins, being first duly sworn, on oath doth depose and say: That he is a member of the Montgomery *deputy sheriff* Department and as such, on the 30th day of June, 1960, at about the hour of 8:45 P. M. he did observe the defendant William L. Griffin in Glen Echo Park which is private property[.] [O]n order of Kebar Inc. owners of Glen Echo Park the def[endant] was asked to leave the park and after giving him reasonable time to comply the def[endant] refused to leave [and] he was placed under arrest for trespassing . . . .

"Whereas, Francis J. Collins doth further depose and say that he, as a member of the Montgomery County Police Department believes that ——————— ——————— is violating Sec. 577 Article 27 of the Annotated Code of Maryland.

"Francis J. Collins."

Md. Ann. Code, 1957 (Cum. Supp. 1961), Art. 27, § 577, is a criminal trespass statute.[2] On the same day a Mary-

---

[2] That section provides:

"Any person . . . who shall enter upon or cross over the land, premises or private property of any person . . . after having been duly notified by the owner or his agent not to do so shall be deemed guilty of a misdemeanor . . . provided . . . [however] that nothing in this section shall be construed to include within its provisions the entry upon or crossing over any land when such entry or crossing is done under a bona fide claim of right or ownership of said land, it being the intention of this section only to prohibit any wanton trespass upon the private land of others."

land Justice of the Peace issued a warrant which charged that petitioner Griffin "[d]id enter upon and pass over the land and premises of Glen Echo Park . . . after having been told by the Deputy Sheriff for Glen Echo Park, to leave the Property, and after giving him a reasonable time to comply, he did not leave . . . contrary to the . . . [Maryland criminal trespass statute] and against the peace, government and dignity of the State." The warrant recited that the complaint had been made by "Collins Deputy Sheriff." An amended warrant was later filed. It stated that the complaint had been made by "Collins, Deputy Sheriff" but charged Griffin with unlawfully entering the park after having been told not to do so by "an Agent" of the corporation which operated the park. Presumably identical documents were filed with respect to the other petitioners.

Petitioners were tried and convicted of criminal trespass in the Circuit Court of Montgomery County. Each was sentenced to pay a fine of $100. The Maryland Court of Appeals affirmed the convictions. 225 Md. 422, 171 A. 2d 717. That court, rejecting the petitioners' constitutional claims, reasoned as follows:

"[T]he appellants in this case . . . were arrested for criminal trespass committed in the presence of a special deputy sheriff of Montgomery County (who was also the agent of the park operator) after they had been duly notified to leave but refused to do so. It follows—since the offense for which these appellants were arrested was a misdemeanor committed in the presence of the park officer who had a right to arrest them, either in his private capacity as an agent or employee of the operator of the park or in his limited capacity as a special deputy sheriff in the amusement park . . .—the arrest of these appellants for a criminal trespass in this manner was no more than if a regular police officer had been called upon

> to make the arrest for a crime committed in his presence . . . . [T]he arrest and conviction of these appellants for a criminal trespass as a result of the enforcement by the operator of the park of its lawful policy of segregation, did not constitute such action as may fairly be said to be that of the State." 225 Md., at 431, 171 A. 2d, at 721.

We granted certiorari, 370 U. S. 935, and set the case for reargument. 373 U. S. 920.

Collins—in ordering the petitioners to leave the park and in arresting and instituting prosecutions against them—purported to exercise the authority of a deputy sheriff. He wore a sheriff's badge and consistently identified himself as a deputy sheriff rather than as an employee of the park. Though an amended warrant was filed stating that petitioners had committed an offense because they entered the park after an "agent" of the park told them not to do so, this change has little, if any, bearing on the character of the authority which Collins initially purported to exercise. If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law. See, *e. g.*, *Screws* v. *United States*, 325 U. S. 91. Thus, it is clear that Collins' action was state action. See *Williams* v. *United States*, 341 U. S. 97; see also *Labor Board* v. *Jones & Laughlin Steel Corp.*, 331 U. S. 416, 429. The only question remaining in this case is whether Collins' action denied petitioners the equal protection of the laws secured to them by the Fourteenth Amendment. If it did, these convictions are invalid.

It cannot be disputed that if the State of Maryland had operated the amusement park on behalf of the owner thereof, and had enforced the owner's policy of racial seg-

regation against petitioners, petitioners would have been deprived of the equal protection of the laws. *Pennsylvania* v. *Board of Trusts,* 353 U. S. 230; cf. *Burton* v. *Wilmington Parking Authority,* 365 U. S. 715. In the *Board of Trusts* case we were confronted with the following situation. Stephen Girard by will had left a fund in trust to establish a college. He had provided in his will, in effect, that only "poor white male orphans" were to be admitted. The fund was administered by the Board of Directors of City Trusts of the City of Philadelphia as trustee. In accord with the provisions of the will it denied admission to two Negro applicants who were otherwise qualified. We held:

> "The Board which operates Girard College is an agency of the State of Pennsylvania. Therefore, even though the Board was acting as a trustee, its refusal to admit Foust and Felder to the college because they were Negroes was discrimination by the State. Such discrimination is forbidden by the Fourteenth Amendment. *Brown* v. *Board of Education,* 347 U. S. 483." 353 U. S., at 231.

The *Board of Trusts* case must be taken to establish that to the extent that the State undertakes an obligation to enforce a private policy of racial segregation, the State is charged with racial discrimination and violates the Fourteenth Amendment.

It is argued that the State may nevertheless constitutionally enforce an owner's desire to exclude particular persons from his premises even if the owner's desire is in turn motivated by a discriminatory purpose. The State, it is said, is not really enforcing a policy of segregation since the owner's ultimate purpose is immaterial to the State. In this case it cannot be said that Collins was simply enforcing the park management's desire to exclude designated individuals from the premises. The president

of the corporation which owned and managed the park testified that he had instructed Collins to enforce the park's policy of racial segregation. Collins was told to exclude Negroes from the park and escort them from the park if they entered. He was instructed to arrest Negroes for trespassing if they did not leave the park when he ordered them to do so. In short, Collins, as stated by the Maryland Court of Appeals, was "then under contract to protect and enforce . . . [the] racial segregation policy of the operator of the amusement park . . . ." 225 Md., at 430, 171 A. 2d, at 720. Pursuant to this obligation Collins ordered petitioners to leave and arrested them, as he testified, because they were Negroes. This was state action forbidden by the Fourteenth Amendment.

*Reversed.*

Mr. Justice Douglas would reverse for the reasons stated in his opinion in *Bell* v. *Maryland, post,* p. 242.

Mr. Justice Clark, concurring.

I join the Court's opinion with the understanding that it merely holds, under the peculiar facts here, that the State "must be recognized as a joint participant in the challenged activity." See *Burton* v. *Wilmington Parking Authority,* 365 U. S. 715, 725 (1961). Deputy Sheriff Collins, an agent of the State, was regularly employed by Glen Echo in the enforcement of its segregation policy. I cannot, therefore, say, as does my Brother Harlan, that the situation "is no different from what it would have been had the arrests been made by a regular policeman dispatched from police headquarters." Here Collins, the deputy sheriff, ordered petitioners to leave the park before any charges were filed. Upon refusal, Collins, the deputy sheriff, made the arrest and then took petitioners to the police station where he filed the charges and secured the warrant. If

Collins had not been a police officer, if he had ordered the petitioners off the premises and filed the charges of criminal trespass, and if then, for the first time, the police had come on the scene to serve a warrant issued in due course by a magistrate, based on the charges filed, that might be a different case. That case we do not pass upon.

MR. JUSTICE HARLAN, whom MR. JUSTICE BLACK and MR. JUSTICE WHITE join, dissenting.

The pivotal issue in this case is whether petitioners' exclusion from Glen Echo, a private amusement park, was the product of state action. I accept the premise that in arresting these petitioners Collins was exercising his authority as deputy sheriff rather than his right as an individual under Maryland law, see 225 Md., at 431, 171 A. 2d, at 721, to arrest them for a misdemeanor being committed in his presence. It seems clear to me, however, that the involvement of the State is no different from what it would have been had the arrests been made by a regular policeman dispatched from police headquarters.

I believe, therefore, that this case is controlled by the principles discussed in MR. JUSTICE BLACK's opinion in *Bell* v. *Maryland, post,* p. 318, decided today, and accordingly would affirm the judgment below.