## DREWS ET AL. *v.* STATE

[No. 113, September Term, 1960.]

*Decided October 22, 1964.*

The cause on remand was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY, MARBURY and OPPEN-HEIMER, JJ.

*Francis D. Murnaghan, Jr.,* with whom was *Henry R. Lord* on the brief, for the appellants on remand.

*Robert C. Murphy, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Frank H. Newell, III, State's Attorney for Baltimore County,* on the brief, for the appellee on remand.

HORNEY, J., delivered the majority opinion of the Court. OPPENHEIMER, J., dissents. Dissenting opinion at page 354, *infra.*

The appellants were convicted in 1960 of violating Code (1957), Art. 27, § 123, by "acting in a disorderly manner to the disturbance of the public peace" in a place of "public resort or amusement." On the appeal to this Court, the convictions were affirmed in *Drews v. State,* 224 Md. 186, 167 A. 2d 341 (1961). Having found that Gwynn Oak Amusement Park in Baltimore County was a place of public resort or amusement within the meaning of the statute, we held that the conduct of the appellants—two of whom were white men, one a white woman, and the other a colored woman—during the course of a

demonstration protesting the segregation policy of the park, by joining arms and dropping to the ground after they had refused to obey a lawful request to leave the privately owned park, was disorderly in that it "disturbed the public peace and incited a crowd." We also held that the action taken by the county police, in arresting the appellants for disorderly conduct (after the police at the request of the park manager had asked them to leave and again they refused), did not constitute state enforcement of racial discrimination in violation of the Fourteenth Amendment of the United States. A direct appeal was thereafter taken to the Supreme Court of the United States, which, in a *per curiam* filed June 22, 1964, in *Drews v. Maryland,* 378 U. S. 547, vacated the judgments and remanded the case to this Court "for consideration in light of *Griffin v. Maryland* [378 U. S. 130] and *Bell v. Maryland* [378 U. S. 226]," decided on the same day as *Drews.*

In *Griffin v. State,* 225 Md. 422, 171 A. 2d 717 (1961), where the park officer was authorized to make arrests either as a paid employee of a detective agency then under contract to protect and enforce the racial segregation policy of the operator of Glen Echo Amusement Park in Montgomery County or as a nonsalaried special deputy sheriff of the county, we affirmed the conviction of the appellants for trespassing on private property in violation of Code (1957), Art. 27, § 577, when they refused to leave the premises after having been notified to do so. But the Supreme Court in *Griffin v. Maryland, supra,* held that the arrest of the appellants by the park officer was state action in that he was possessed of state authority and purported to act under that authority, and reversed the judgment. In *Bell v. State,* 227 Md. 302, 176 A. 2d 771 (1962), where the appellants had entered the private premises of a restaurant in Baltimore City in protest against racial segregation, sat down and refused to leave when asked to do so on the theory that their action in remaining on the premises amounted to a permissible verbal or symbolic protest against the discriminatory practice of the owner, we affirmed the convictions for criminal trespass for the reason that the right to speak freely and to make public protest did not import a right to invade or remain on privately owned property so long as the owner retained the

right to choose his guests or customers. The Supreme Court granted certiorari. In the interim between the decision of this Court and the decision of the Supreme Court, both the city and state enacted "public accommodation laws." When the Supreme Court decided *Bell v. Maryland, supra,* it reversed the judgment of this Court and remanded the case for a determination by us of the effect of the subsequently enacted public accommodation laws on pending criminal trespass convictions.[1]

On the remand of this *Drews* case, the appellants raise two questions. In effect they contend: (i) that their arrest and conviction constitutes state action in the light of the decision in *Griffin v. Maryland, supra;* and (ii) that to uphold their conviction now for acts arising out of sit-in demonstrations at Gwynn Oak Amusement Park would be to deny them due process and equal protection because the State's Attorney for Baltimore County has failed to prosecute approximately two hundred other cases charging the same offense.

### (i)

In reconsidering the convictions of the "Drews" appellants in the light of *Griffin v. Maryland, supra,* we find nothing therein which compels or requires a reversal of our decision in *Drews v. State* (224 Md. 186). Significantly, the question as to whether the same result would have been reached by the Supreme Court had the arrests in *Griffin* been made by a regular police officer, as in the *Drews* case, was not decided. The arrests and subsequent convictions of the appellants for criminal trespass were held in *Griffin* to constitute state action because the arresting officer, a park employee, was also a special deputy sheriff. In *Drews,* however, the appellants not only refused to leave the amusement park peacefully after they had been requested to do so, but acted in a disorderly manner when the arresting officers, who were county police officers, not park employees, undertook to eject them. The record in *Drews* does not show, nor has it ever been contended, that the park employee, who assisted the arresting officers, had power (as was

---

1. See *Bell v. State,* 236 Md. 356, 204 A. 2d 54 (1964), decided on the remand on or about the same time as this case.

the case in *Griffin*) to make arrests. By reversing *Griffin* and remanding *Drews*, the Supreme Court must have had some doubt as to whether the two cases were distinguishable. We think there are important differences in the two cases between the reasons or causes for the arrests and the type of police personnel that made the arrests, and that such distinctions are controlling.

In *Drews*, where the trespassers conducted themselves in a disorderly manner when the police undertook to forcibly eject them from the amusement park in an effort to prevent them from further inciting the gathering crowd by remaining in the park after they had been requested to leave by the park manager as well as the county police, the arrests were made by policemen who were not employed by the park, who were not paid by the park, and who were under no orders of any park official. The very fact that the police made no move to eject the trespassers from the park until they were requested to do so by the manager shows the complete absence of any co-operative state action. Nor was there any evidence that the State desired or intended to maintain the amusement park as a segregated place of amusement. In these circumstances, it seems clear to us that the arrest of the Drews appellants (who were both white and colored) for disorderly conduct did not constitute state enforcement of racial discrimination. To hold otherwise would, we think, not only deny the park owners equal protection of the laws, but could seriously hamper the power of the State to maintain peace and order and, when imminent as was the case here, to forestall mob violence or riots.

We deem it unnecessary to elaborately discuss the only two cases cited by the appellants—*State v. Brown*, 195 A. 2d 379 (Del. 1963), and *Wright v. Georgia*, 373 U. S. 284 (1963). Neither is apposite here and, assuming they are, both are clearly distinguishable on the facts. Even if the arrest of the Drews appellants for disorderly conduct was the result of or arose out of their ejection from the park for trespassing on private property, there was no violation of a constitutional guarantee. We reiterate what was recently said in *In Matter of Cromwell*, 232 Md. 409, 413, 194 A. 2d 88 (1963), that "we find no violation of the Fourteenth Amendment in the as-

sertion of a private proprietor's right to choose his customers, or to eject those who are disorderly." We see no reason to reverse the convictions in this case.

The reason for the remand of the case for consideration in the light of *Bell v. Maryland, supra,* is not clear. The judgments in *Bell* were vacated and the case remanded to enable this Court to pass upon the effect of supervening public accommodation laws on the criminal trespass law. Since there is no provision in the public accommodation law enacted by the State (Code, 1964 Supp., Art. 49B, § 11) with respect to amusement parks, we need not decide the effect of the supervening legislative enactment on the convictions in this case.

## (ii)

The second contention of the appellants—that the failure of the State to prosecute others for the same or similar offenses is a denial of due process or equal protection—is without merit and has no bearing on the convictions in this case. Guilt or innocence cannot be made to depend on the question of whether other parties have not been prosecuted for similar acts. *Callan v. State,* 156 Md. 459, 466, 144 Atl. 350 (1929). Nor is the exercise of some selectivity in the enforcement of a criminal statute, absent a showing of unjustifiable discrimination, violative of constitutional guarantees. *Oyler v. Boles,* 368 U. S. 448 (1962). See also *Moss v. Hornig,* 314 F. 2d 89 (C. A. 2d 1963).

*Judgments reinstated and reaffirmed; appellants to pay the costs.*

OPPENHEIMER, J., filed the following dissenting opinion.

In *Griffin v. Maryland,* 378 U. S. 130 (1964), the Supreme Court of the United States reversed the judgments against the defendants affirmed by us in Griffin v. State, 225 Md. 422, 171 A. 2d 717 (1961) on the ground that the arrests were the products of State action taken because the defendants were Negroes, and therefore racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. In *Griffin,* the arresting officer, Collins, was a deputy sheriff of Montgomery County employed by and subject to the direction

and control of the amusement park. The record shows that in this case the special policeman, Officer Wood, was in the employ of the amusement park but it does not show whether or not he had been deputized by Baltimore County. Pursuant to the instructions of the park's management, Wood told the defendants the park was closed to Negroes, ordered them to leave and, when they did not, sent for the Baltimore County police. He and the county police together removed the defendants from the park.

If Wood, the "special officer" in this case, had virtually the same authority from Baltimore County that Collins had from Montgomery County, it seems to me immaterial that he called in the Baltimore County police to help him evict the defendants. He was the proximate cause of the arrests. If his authority stemmed from the State, then under *Griffin v. Maryland, supra,* the State was a joint participant in the discriminatory action.

On the facts, it also seems immaterial that the convictions here were for disorderly conduct rather than for trespass as in *Griffin.* In resisting the command of the officers to leave the park, the defendants used no force against the officers or anyone else; they held back or fell to the ground. Such failure to obey the command, if the command itself was violative of the Constitution, would not sustain the convictions. *Wright v. Georgia,* 373 U. S. 284, 291, 292 (1963).

The Baltimore County Code authorizes the county to appoint special police officers to serve for private persons or corporations. Baltimore County Code, Sections 24-13 and 35-3 (1958). I would remand this case to the Circuit Court for Baltimore County for the taking of additional testimony to determine whether or not Wood was appointed by Baltimore County under these sections of its Code. If he was, the convictions should be reversed.