FARRIS, Circuit Judge,
dissenting.
The Michigan statute upon which the majority relies places specific limitations on private security guards that distinguish their powers of detention from those of public peace-officers. See M.C.L. § 338.1080. Although security guards can make arrests without a warrant, M.C.L. § 338.1080 emphasizes that their authority is limited by the bounds of their private employment: They can only detain individuals on company property, during their hours of employment, while wearing a company uniform.[1]
The Michigan Supreme Court has specifically rejected the majority’s conclusion *651 that licensed, private security guards are necessarily state actors. (Op. 645-46.)
[Defendant believes that the licensing statutes which regulate private security guards demonstrate the requisite degree of state action to bring their activities under color of state law, subject to constitutional restraints. We disagree. We do not believe that the mere licensing of security guards constitutes sufficient government involvement to require the giving of Miranda warnings. City of Grand Rapids v. Impens, 414 Mich. 667, 327 N.W.2d 278, 281 (1982).
By its own account, in granting licenses to private security guards, the State of Michigan has not attempted to, “cloak[] private individuals with virtually the same power as public officers.” See Payton, 184 F.3d at 629. But even if the casino’s private security guards did hold plenary arrest authority' under Michigan law, it would still be necessary to establish that they actually exercised this authority during the detention of Romanski.
In applying the public interest test, it is the exercise, and not the possession, of powers belonging exclusively to the state that determines whether the action was under color of state law. See Chapman v. Higbee Co., 319 F.3d 825, 834 (6th Cir.2003) (en banc) (“Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state.”); Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass’n, 531 U.S. 288, 302-03, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (holding that actions can only be attributed to the state if they were “exclusively and traditionally” public); see also Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (“[V]ery few [functions] have been 'exclusively reserved to the State.’ ” (citation omitted)).[2] Romanski has presented no evidence that the State of Michigan has traditionally and exclusively reserved the power to make warrantless arrests. To the contrary, the Michigan Supreme Court has held that licensed private security guards do not act as state actors in detaining shoplifting suspects. Impens, 327 N.W.2d at 281. (“Their [guards’] role may be viewed as an extension of the shopkeepers’ privilege to detain for a reasonable period of time a person suspected of theft or failure to pay.”).
Viewing the facts in the light most favorable to defendants, I am not convinced that the casino security guards acted under color of state law in detaining Roman-ski. The four security guards approached and then later escorted Romanski off-the-floor because they believed she had committed a crime and, as the guards contend, she had become loud and belligerent when they attempted to explain the casino’s policy against “slot-walking.” Even Romanski concedes that Brown detained her, not simply because of her attitude, but because she suspected Romanski of theft. (Op. 633-34.) The law on this point is very clear: Investigation of a possible crime on an employer’s premises “does not transform the actions of a private security officer into state action.” Chapman, 319 F.3d at 834. That the “crime” was a “trifle,” as the opinion notes, and that the guard’s actions may have constituted an egregious tort, is irrelevant.
*652 As in Chapman, where a security guard conducted an unauthorized strip search of a female customer, the behavior of the casino security guards in this case was outrageous and abusive, but it was clearly meant to serve the interests of the employer. Id. The humiliating detention of Romanski was based solely on the enforcement of an inane casino policy and ultimately involved collection of personal data to prevent her from returning to the casino for six months. However, the security guards neither threatened nor actually invoked the authority of the state during the incident.[3]
Because the actions of the casino’s security guards failed to constitute state action, I would dismiss Romanski’s § 1983 claim. In the absence of subject-matter jurisdiction, I would remand her case to the district court with directions to vacate and remand to state court.
I respectfully dissent.

. The majority relies on the holdings in Payton v. Rush-Presbyterian and Henderson v. Fisher for the proposition that the geographical limitations on security guards' authority in M.C.L. § 338.1080 do not alter the "plenary” nature of their power. (Op. 647.) Those cases are distinguishable from this case. The Chicago ordinance cited in Payton states that private officers "possess the powers of the regular police patrol at the places for which they are respectively appointed or in the line of duty for which they are engaged.” Payton v. Rush-Presbyterian, 184 F.3d 623, 625 (7th Cir.1999). Unlike the Michigan statute, the Chicago ordinance grants special police officers broad police powers without specific geographical limitations. Moreover, the ordinance also forces special police officers to comply with all rules and regulations governing public officers and requires them to report directly to the superintendent of police. Id. Likewise, Henderson v. Fisher also differs significantly from this case. In Henderson the court held that the University of Pittsburgh, where the campus police worked, was essentially a state institution. Henderson v. Fisher, 631 F.2d 1115, 1118 (3d Cir.1980) ("[T]he University of Pittsburgh has lost its wholly private charter and has become an instrumentality of the Commonwealth ...."). Furthermore, the Pennsylvania statute cited in Henderson extends the authority of campus officers beyond the bounds of state universities, permitting them to "exercise those powers ... conferred pursuant to this section within the municipality for the limited purpose of aiding local authorities in emergency situations.” 71 Pa. Stat. Ann. § 646 (2005). Due to M.C.L. § 338.1080’s comparative limitations on the authority of private security guards, I believe this case is more akin to Wade v. Byles, than either Payton or Henderson. See Wade v. Byles, 83 F.3d 902, 904 (7th Cir.1996) (finding an absence of state action where guards were not allowed to pursue individuals outside the lobby of city housing authority buildings).

. While the Supreme Court has held that certain actions may be public even if they could have been undertaken in a private capacity, see Griffin v. Maryland, 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964); West v. Atkins, 487 U.S. 42, 56 n. 15, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), these instances involve preventing a state from avoiding a constitutional duty by delegation, see Georgia v. McCollum, 505 U.S. 42, 53, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Wade, 83 F.3d at 906, or an actor with parallel roles "purporting to act” in the state role, see Flagg Bros., 436 U.S. at 163 n. 14, 98 S.Ct. 1729.

. As the majority notes, the Michigan State Police were notified regarding Romanski's ejection. (Op. 635-36.)