**Sharon Y. LYLES, Plaintiff,**

v.

**EXECUTIVE CLUB LTD., Defendant.**

**Lamontia STAFFORD, Olivia Whitaker, Plaintiffs,**

v.

**EXECUTIVE CLUB LIMITED T/A Archibald's, Defendant.**

**Civ. A. Nos. 86–3039, 87–0365.**

United States District Court, District of Columbia.

July 14, 1987.

Pamela L. Lyles, Riverdale, Md., for plaintiff in Lyles.

Alfonso W. Pendergrass, Washington, D.C., for plaintiffs in Stafford.

Joel M. Finkelstein, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

### I. INTRODUCTION

The instant case requires the Court to consider allegations of constitutional injury. The plaintiffs are three women.[1] All claim to have been injured by defendant Archibald's nightclub ("Archibald's" or "the nightclub"), a bar located in Washington, D.C. The plaintiffs apparently entered the nightclub, requested service, were refused the same, and were thereafter ordered to leave the premises by agents of the establishment. The plaintiffs contend that they were denied service on the ground that Archibald's discriminates against either single women or single black women.[2] The plaintiffs contend that such denial of service in a place of public accommodation is violative of the equal protection clause of the fourteenth amendment to the Constitution and section 1–2519(a) (1) of the District of Columbia Code, prohibiting discriminatory practices in places of public accommodation. To redress the injuries allegedly sustained as a result of Archibald's

---

1. Sharon Lyles, Lamontia Stafford, and Olivia Whitaker.

2. This is the only fact which the defendant denies.

conduct, the plaintiffs demand judgment in the sum of $11 million plus costs, fees, and interest. In response, Archibald's has filed a motion to dismiss on the ground that the plaintiffs have failed to state a claim upon which relief may be granted. The defendant's motion raises two defenses: (1) that reliance on the fourteenth amendment is inappropriate and (2) that Archibald's actions cannot be deemed state action within the meaning of the federal Constitution. For reasons hereafter provided, the Court agrees with the defendant's arguments and, accordingly, dismisses the plaintiffs' complaints.

## II. DISCUSSION

### A. *Fourteenth Amendment*

■ The fourteenth amendment to the United States Constitution states, in pertinent part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. All of the plaintiffs rely on this provision as the sole basis for proper federal jurisdiction. The plaintiffs concede that the purportedly offending governmental actor in this case is the District of Columbia. However, it is settled law that the fourteenth amendment is not applicable in the District of Columbia. *See Neild v. District of Columbia*, 110 F.2d 246, 256 (D.C.Cir.1940). In lieu of the fourteenth amendment, the Supreme Court holds that litigants in the District of Columbia must rely upon the fifth amendment to the Constitution as a ground for claims of discrimination. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). Without more, this defect in pleading compels the Court to grant the defendant's motion to dismiss for failure of the plaintiffs to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

**3.** By its terms, the fifth amendment does not contain an equal protection clause. The amendment states, in pertinent part, no person shall "be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Nevertheless, the District of Columbia is not exempt from providing equal protection of the laws. In *Bolling, supra,* 347 U.S. at 499, 74 S.Ct. at 694, the Supreme Court wrote,

### B. *State Action*

Pursuant to Federal Rule of Civil Procedure 15(a), the Court would ordinarily grant the plaintiffs leave to amend their complaints to properly state a claim on the basis of the fifth amendment.[3] However, the Court will not grant such leave in this case since assuming, *arguendo*, that the plaintiffs based their equal protection action on the fifth amendment, it would still fail to state a claim upon which relief can be granted.

■ The Court must dismiss the plaintiffs' complaints unless they can demonstrate that the District of Columbia is sufficiently involved in the operation of Archibald's to permit the nightclub's actions to be termed "state action." The plaintiffs do not dispute their obligation to prove state action. However, they maintain that the Supreme Court requires only an allegation of state involvement to defeat a motion to dismiss. *See United States v. Guest*, 383 U.S. 745, 756, 86 S.Ct. 1170, 1177, 16 L.Ed. 2d 239 (1966). Plaintiffs' position is simply incorrect. In *Guest*, the criminal indictment at issue contained sufficient allegations of state involvement to withstand the defendant's motion to dismiss. *Id.* Thus, *Guest* merely stands for the proposition that where a complaint alleges sufficient state involvement, it should not be dismissed. Accordingly, in later cases, the Supreme Court has affirmed district courts' dismissals of constitutional claims which fail to allege state action with the sufficiency necessary to withstand a motion to dismiss. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974). Accordingly, the Court rejects plaintiffs' attempt to block resolution of the defendant's motion to dismiss.

[t]he "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process. *Id.* at 499, 74 S.Ct. at 694.

██ The Supreme Court has repeatedly held that equal protection only prohibits discriminatory action by the government; private conduct, no matter how discriminatory or wrongful, is not regulated by the Constitution. *See Blum v. Yaretsky,* 457 U.S. 991, 1002, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982). The District of Columbia, although it is a territory, is a governmental entity and, as such, its action may be considered state action for the purposes of constitutional analysis. *Cf. Greenya v. George Washington Univ.,* 512 F.2d 556, 559 (D.C.Cir.), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975). Although the concept of state action has been frequently discussed by the Supreme Court, no precise definition has ever been articulated. The Supreme Court has written that,

> to fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an "impossible task" which "This Court has never attempted." Only by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance.

*Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961) (citations omitted).

██ In the instant case, the defendant is a nightclub which offers its services to the general public. The only state action alleged by the plaintiffs is that Archibald's operates pursuant to a liquor license issued by the District of Columbia. Therefore, plaintiffs claim that the defendant is subject to extensive state regulation and may be considered an arm of the state.

The Court disagrees. Based on the most recent pronouncements of the Supreme Court, Archibald's relationship with the District of Columbia does not suffice to transform the nightclub's conduct into state action. In *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 350, 95 S.Ct. at 453, the Supreme Court considered whether the action of a privately owned utility company subject to extensive state regulation constituted state action. The

Court held that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State.... [N]or does the fact that the regulation is extensive and detailed.... *Id.* The proper inquiry, the Court held, is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453. In later decisions, the Court has further explained the nexus requirement:

> [a]lthough the factual setting of each case will be significant, our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives....

*Blum, supra,* 457 U.S. at 1004–05, 102 S.Ct. at 2786 (citations omitted). Application of these general principles to the facts at bar demonstrates that the mere issuance of a liquor license by the District of Columbia to Archibald's does not, without more, suffice to establish that Archibald's action is state action.

More specifically, the Supreme Court confronted a closely related situation in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). In *Moose Lodge,* an all white private club refused to serve food or beverages to the black guest of a club member. The district court found that the lodge, through its employees, refused service to the guest, Mr. Irvis, solely on account of his race. Irvis claimed that because the Pennsylvania Liquor Board had issued Moose Lodge a license to sell alcoholic beverages, the lodge's refusal of service to him constituted state action in violation of his right to equal protection under the law. In rejecting the petitioner's argument, the Court observed that where discrimination is pri-

vate, the state must have "significantly involved itself with invidious discriminations" before the discrimination will rise to the level of a constitutional violation. *Id.* at 173, 92 S.Ct. at 1971 (quoting *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 1633, 18 L.Ed.2d 830 (1967)). To determine whether the state had so involved itself with the challenged discrimination, the Court examined the state licensing system to determine whether it required, encouraged, or affirmatively authorized the practice of discrimination. The Court found that,

> [t]he Pennsylvania Liquor Control Board plays absolutely no part in the establishing or enforcing the membership or guest policies of the club that it licenses to serve liquor. There is no suggestion in this record that Pennsylvania law, either as written or as applied, discriminates against minority groups either in their right to apply for club licenses themselves or in their right to purchase and be served liquor in places of public accommodation.... However detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination.

*Id.* at 175–77, 92 S.Ct. at 1972–73. This reasoning is equally applicable in the instant case since the District of Columbia Alcoholic Beverage Control Act, D.C.Code Ann. § 25–101 *et seq.*, in no way fosters discrimination.[4]

The plaintiffs' attempts to distinguish *Moose Lodge* are unavailing. It is indisputable, as the plaintiffs point out, that *Moose Lodge* was a private club whereas Archi-

bald's is a place of public accommodation. However, in and of itself, this distinction does not vitiate the relevance of *Moose Lodge* to the case at bar. In fact, the Fifth Circuit relied upon *Moose Lodge* to reject a petitioner's claim that a males only admission policy in a public restaurant, reliant upon state liquor licenses, violated her right to equal protection under the law. The restaurant, like Archibald's, was a place of public accommodation. *See Millenson v. New Hotel Monteleone*, 475 F.2d 736 (5th Cir.), *reh'g denied*, 477 F.2d 596, *cert. denied*, 414 U.S. 1011, 94 S.Ct. 376, 38 L.Ed.2d 250 (1973). The plaintiffs have provided neither authority nor any reason why the distinction between a private club and a place of public accommodation warrants a different result from the one reached in *Moose Lodge.* The Court thus rejects the plaintiffs' first attempt to distinguish *Moose Lodge.*[5]

The plaintiffs also intimate that this case is governed by *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In *Burton,* a place of public accommodation, a restaurant, refused to serve black patrons. The Supreme Court held that such conduct violated the equal protection clause of the Constitution. However, the Court founded its conclusion that state action existed on more than the existence of a liquor license. The Court held that

> [t]he State has so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so

---

**4.** In their pleadings and papers, the plaintiffs make no argument to the contrary.

**5.** In *Lombard v. Louisiana,* 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963), the Supreme Court held the equal protection clause of the Constitution violated where black students were refused service at a restaurant lunch counter. In *Lombard,* however, the Court found that certain public announcements made by the Superintendent of Police and the Mayor of New Orleans were the equivalent of city ordinances and therefore constituted state action. The Court's finding of state action distinguishes *Lombard* from this case. However, the plaintiffs in this case seem to be relying upon a concurring opin-

ion by Justice Douglas wherein he differentiated private enterprises from public ones. He observed that places of public accommodation are places of public interest and therefore may be regulated. *Id.* at 276–79, 83 S.Ct. at 1126–28. As such, he concluded that places of public accommodation which are licensed by the state become instrumentalities of the state and violate the equal protection clause simply by engaging in discriminatory practices. *Id.* at 282–83, 83 S.Ct. at 1129–30. Given the full court's present posture—that state regulation does not *per se* convert action of a private entity into state action—the plaintiffs' reliance on this concurrence seems misplaced.

"purely private" as to fall without the scope of the Fourteenth Amendment. *Id.* at 725, 81 S.Ct. at 862. To arrive at this conclusion, the Court relied on a myriad of factors: the restaurant leased space under a long term lease in a publicly owned building dedicated to "public uses." Public funds were used to provide upkeep and maintenance of the building, including all necessary repairs. The restaurant's activities, including discrimination, conferred a benefit on the state by inducing a greater number of customers to patronize the state's parking garage in the same building. Moreover, the availability of a state run parking garage encouraged customers to frequent the building's only restaurant. Finally, the profits earned by the restaurant were used to confer a benefit on the state; for, these profits were used to pay the rent.

The plaintiffs have provided no evidence that the District of Columbia has "insinuated itself into a position of interdependence with [Archibald's]." *Id.* at 725, 81 S.Ct. at 862. Moreover, there is no evidence of any public funding or public benefit being derived from Archibald's activities. As such, the Court rejects the plaintiffs' contention that *Burton* governs the instant case.[6]

## III. CONCLUSION

For all the foregoing reasons, the Court finds an absence of state action. Accordingly, even if the plaintiffs had properly founded their constitutional claims on the fifth amendment, the Court would be required to dismiss them for failure to state a claim upon which relief can be granted. Because the plaintiffs' complaints state only a single federal claim, the dismissal of that claim persuades the Court to dismiss the plaintiffs' entire case, including the

pendent claims. The Supreme Court has stated that where there is pendent jurisdiction,

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966). In closing, the Court emphasizes that it has expressed no opinion regarding the validity of the plaintiffs' claims pursuant to D.C. Code Ann. § 1-2519. The Court holds only that plaintiffs cannot obtain the relief they seek under the fourteenth or fifth amendment to the Constitution.

---

**6.** In their briefs, the plaintiffs argue that either *Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964), or *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961), is the controlling precedent in this case. Once again, the Court cannot agree. In *Griffin*, the plaintiffs, black youths, were arrested for refusing to exit a privately owned amusement park. The Supreme Court found a violation of the fourteenth amendment. In concluding that state action existed, the Court focused on the fact that the park employee who ordered the petitioners off the park's premises was a depu-

tized sheriff of Montgomery County, Maryland. *Griffin, supra,* 378 U.S. at 132, 135, 84 S.Ct. at 1771, 1772. The Court held that "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action." *Id.* at 135, 84 S.Ct. at 1773. In the instant case, the plaintiffs have not alleged that the employees who asked them to leave Archibald's were authorized by the state to so act. As such, *Griffin* is inapposite. Likewise, *Garner* provides no support for plaintiffs' position since the Supreme Court never reached the question of what constitutes state action.