**Hardy H. SEGLER, Plaintiff,**

v.

**CLARK COUNTY; Las Vegas Metropolitan Police Department; Jerry Keller in his individual and in his official capacity as Sheriff; EMSA Correctional Care, Inc., a Florida Corporation, John Does I through V; and Doe Corporations VI through X, Defendants.**

**No. CV–S–99–1481–PMP(RJJ).**

United States District Court, D. Nevada.

May 3, 2001.

---

Victor Perri, Las Vegas, NV, for Hardy H. Segler.

Richard Maurer, Las Vegas, NV, for Clark County, Jerry, Keller, Las Vegas Metro. Police Dept.

Becky Christiansen, Las Vegas, NV, for EMSA Correctional Care, Inc.

*ORDER*

PRO, District Judge.

Presently before this Court is a Motion for Summary Judgment (Doc. # 53) filed on January 23, 2001 by Emergency Medical Service Associates ("EMSA"). Plaintiff Hardy H. Segler ("Segler") filed an Opposition (Doc. # 65) on March 8, 2001.

Defendant EMSA submitted a Reply (Doc. # 68) on March 22, 2001.

## I. BACKGROUND

Plaintiff Segler was confined in the Clark County Detention Center ("Center") from October 24, 1997 through December 29, 1997. (Defendant's Motion for Summary Judgment at 2–4.) Prior to his incarceration, Segler had three surgeries on his left shoulder for a work related injury. (Plaintiff's Opposition, Ex. C, Depo. of Hardy Howell Segler, Jr. at 37–38.)

At the time of Segler's incarceration, Defendant Las Vegas Metropolitan Police Department ("LVMPD") was contracted with Defendant EMSA to provide medical care to the inmates at the Center. (Plaintiff's Opposition, Ex. M, Agreement at 1.) Under the contract, EMSA agreed to "organize, conduct and be responsible for a complete medical care delivery system which will render required medical care 24–hours a day, 7–days a week, 365–days a year, to all prisoners." *Id.* at 2.

Upon Segler's arrival at the Center on October 24, 1997, EMSA gave Segler a medical assessment. (Defendant's Motion for Summary Judgment, Ex. A, Medical Screening.) After this, the Detention Center put Segler in a holding cell. (Plaintiff's Opposition at 4.) On October 28, 1997, approximately four days later, the Center moved Selger to his regular general population housing. *Id.* at 5.

Once in his regular housing, Segler reinjured his left shoulder on November 4, 1997. (Plainitff's Opposition, Ex. A, Aff. of Hardy H. Segler at ¶ 12.) Segler felt immediate and intense pain. *Id.* An officer asked Segler if he needed to go to the hospital and Segler told the officer about his three surgeries. *Id.* at ¶ 13. At 11:00 p.m., Registered Nurse M. Banez, Jr. ("Banez") did a preliminary assessment of Segler's shoulder. (Defendant's Motion

for Summary Judgment, Ex. E, Progress Notes.) Plaintiff alleges this was four hours after injuring himself. (Plaintiff's Opposition at 5.) Defendant maintains Nurse Banez came within one hour of Segler injuring himself. (Defendant's Motion for Summary Judgment at 3.) Nurse Banez "performed range of motion tests, circulation and sensation tests and visually examined the site of Plaintiff's alleged injury." *Id.* Then, Nurse Banez gave Segler anti-steriodal pain killers and a sling to immobilize his shoulder until Segler could see the doctor. (Defendant's Motion for Summary Judgment, Ex. E, Progress Notes.) The pain medication not an anti-inflammatory. (Plaintiff's Opposition, Ex. K, Depo. of Dr. Hoffman at 22.)

On November 5, 1997, Selger refused a dental screen, a physical exam and a mental health screen. (Defendant's Motion for Summary Judgment, Ex. F, Refusal of Treatment Form.) On November 6, 1997, EMSA contends that Dr. Hoffman, a doctor at the Center saw Segler, noted no dislocation and ordered an x-ray and psychiatric care because of Segler's demeanor with the doctor. (Defendant's Motion for Summary Judgment at 3–4.) Segler alleges that Dr. Hoffman did not see Segler on November 6, but instead that Nurse Banez took Segler to the medical ward for an x-ray only. (Plaintiff's Opposition at 5.) Dr. Hoffman does not recall actually seeing Segler on November 6, 1997. (Plaintiff's Opposition, Ex. K, Depo. of Dr. Hoffman at 66.)

Desert Radiologists x-rayed Segler on November 6, 1997. (Defendant's Motion for Summary Judgment, Ex. H, Letter.) Dr. Bruce Topper reviewed the x-ray and sent a provisional report to Dr. Hoffman on November 6, 1997. *Id.*

Segler contends that after receiving his x-ray and no other treatment, he requested medical care by filling out grievance forms and requests for medical treatment forms. (Plaintiff's Opposition at 6.) Segler also maintains he requested medical treatment directly from nurses when they distributed inmate medication. (Plainitff's Opposition, Ex. A, Aff. of Hardy H. Segler at ¶ 19.) Segler alleges he received no treatment based upon his requests through the forms and to the nurses. (Plaintiff's Opposition at 6.)

On December 10, 1997, Dr. Hoffman saw Segler to follow up after the x-ray. (Defendant's Motion for Summary Judgment, Ex. E, Progress Notes.) At this time, the doctor gave Segler another psychological referral and also prescribed Motrin, an anti-inflammatory pain killer. (Plaintiff's Opposition, Ex. K, Depo. of Dr. Hoffman at 67.) Following Selger's release from jail on December 29, 1997, Segler's shoulder required two additional surgeries. (Plaintiff's Opposition at 8.)

## II. STANDARD OF REVIEW

A motion for summary judgment terminates, without a trial, actions in which "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment motion may be made in reliance on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Id.*

The movant is entitled to summary judgment if the non-moving party, who bears the burden of persuasion, fails to designate " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Additionally, all underlying facts are

viewed in the light most favorable to the non-moving party. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996). That burden is met by showing an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot rest upon allegations of denials of pleadings, but must demonstrate a genuine issue for trial. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995).

### III. DISCUSSION

#### A. Eighth Amendment

##### 1. Municipality

Plaintiff Segler brought suit against Defendant EMSA under 42 U.S.C. § 1983 (1994). Segler alleges that EMSA violated his Eighth and Fourteenth Amendment Constitutional rights by having "created, fostered, or acquiesced in conditions, policies and practices that deprived Plaintiff of adequate medical treatment at the County jail." (Plaintiff's Complaint at 5–6.)

EMSA declares itself to be a municipality under § 1983. However, Segler disputes EMSA's contention. Instead, Segler reasons that EMSA is a private corporation under contract by the Las Vegas Metropolitan Police Department ("LVMPD")

and therefore, not a municipality. This Court agrees.

The United States Supreme Court deemed the role of a municipality in § 1983 claims to be a special one. Under § 1983, a municipality may be held liable for the "execution of a government policy or custom ... [made] by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, a municipality is immune from suit for punitive damages. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 13, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). This Court will not lightly expand the distinct role of a municipality under § 1983 to include a private corporation.

First, EMSA qualifies as a state actor who may be liable under § 1983. (Plaintiff's Opposition, Ex. M, Agreement.) EMSA worked in the Center providing all of the medical care to the inmates. Thus, EMSA was "fully vested with state authority to fulfill essential aspects of the duty, place on the State by the Eighth Amendment ... to provide essential medical care to those the State had incarcerated." *West v. Atkins*, 487 U.S. 42, 56–57, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). *See also Griffin v. Maryland*, 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity....") Therefore, EMSA qualifies as a state actor under § 1983.

However, EMSA clearly does not meet the criteria needed to be considered a municipality under § 1983. In *City of Newport v. Fact Concerts, Inc.*, the United State Supreme Court found the unique

qualities of a municipality meant municipalities were not liable for punitive damages under § 1983. 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The Court relied on the intent of awarding punitive damages which would not be met by allowing such an assessment against a municipality. *Id.* at 266, 101 S.Ct. 2748. Finding the reasons for assessing punitive damages against a party were for punishment and prevention of future misconduct, the Court concluded punitive damages did not bring the stated results in the case of municipalities. *Id.* at 266–67, 101 S.Ct. 2748. The award of punitive damages against a municipality would punish "only the taxpayers, who took no part in the commission of the [violation.]" *Id.* at 267, 101 S.Ct. 2748. Additionally, punitive damages were meant to make the wrongdoer suffer for unlawful conduct which would not be the case when a municipality was found liable for the actions of its officials. *Id.* at 268, 101 S.Ct. 2748. Finally, punitive damages would not act as a deterrent to a municipality. *Id.* at 268, 101 S.Ct. 2748. The impact on municipal officials, who were most likely the wrongdoers would be uncertain. *Id.* at 268–69, 101 S.Ct. 2748. Also, punitive damages were not a strong incentive for the future prevention of Constitutional violations by those municipal officials. *Id.* at 270, 101 S.Ct. 2748.

EMSA is a private corporation. (Plaintiff's Opposition, Ex. DD, Corporate Information.) As such, EMSA does not fit the requirements for a municipality set out by the United States Supreme Court in the *City of Newport* case. 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616. Although EMSA is a state actor through its contract with LVMPD, the award of punitive damages against EMSA would not punish taxpayers in the way such a decision would affect a municipality. Instead, punitive damages would be assessed against EMSA which would bear the burden of payment as a private corporation. Also, the deterrence effect of an award of punitive damages would impact EMSA as a private corporation influencing the possible future actions by EMSA or its employees.

Therefore, this Court finds that EMSA is not a municipality. Segler does not need to show a policy or custom by EMSA in order to show liability under § 1983. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Additionally, EMSA may be found liable for punitive damages.

## 2. Medical Care

■ Plaintiff Segler contends that Defendant EMSA had a policy of deliberate indifference to Segler's medical needs in the Center which violated the Eighth and Fourteenth Amendments. (Plaintiff's Complaint at 5.) This Court must look to whether the actions of EMSA violated the Eighth Amendment.

■ The Eighth Amendment limits punishment to that which is not "cruel and unusual." U.S. Const. amend. VIII. The Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain ... or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (citations omitted). Specifically, the denial of medical attention is an Eighth Amendment violation "if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

■ Segler may show deliberate indifference by showing he had a serious need for medical treatment which EMSA

did not meet. Examples of an inmate's serious need for medical treatment include: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997). Additionally, Segler may show that EMSA was deliberately indifferent to his serious medical needs because EMSA denied, delayed or intentionally interfered with Segler's medical treatment. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). However, the delay must cause substantial harm to the inmate. *Wood*, 900 F.2d at 1334.

■■■ At the same time, certain acts by medical staff at a jail or prison do not qualify as deliberate indifference. Isolated occurrences of neglect are not deliberate indifference. *Toussaint*, 801 F.2d at 1111. Additionally, neither accidents, negligence by the medical staff nor medical malpractice are enough without a showing of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs". *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. Finally, "a difference of opinion [between medical professionals] does not amount to a deliberate indifference." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Thus, to make a determination on whether the actions of EMSA amounted to deliberate indifference, this Court must look to the facts of Segler's case against EMSA. *Wood*, 900 F.2d at 1334.

A number of facts at issue in this case are important to determine whether EMSA was deliberately indifferent to Segler's medical needs. The parties dispute whether Segler saw Dr. Hoffman on November 6, 1997. If Segler did not actually see a doctor until December 10, 1997, over a month after the injury, such a delay could evidence deliberate indifference by EMSA. The parties also dispute the amount of time between Segler's reinjury and his initial medical treatment by a nurse in Segler's cell. The sequencing of events of Segler's medical care is at the very essence of this case and as such, this Court cannot make such a determination on material issues of fact. *Catrett*, 477 U.S. at 324, 106 S.Ct. 2548. Certain other facts of this case when considered alongside the issue of the above medical visits may show deliberate indifference by EMSA: the lapse in time between Segler's x-ray and next visit with medical personnel; and the issue of anti-inflammatory pain killers. *See McGuckin*, 974 F.2d at 1059–60 (stating that the existence of chronic pain or a medical issue which affects an inmate's daily activities may be deliberate indifference); *Wood*, 900 F.2d at 1334 (finding a delay in medical treatment may be deliberate indifference if it causes substantial harm). These facts must be left for a determination by a trier of fact.

Thus, upon reviewing the evidence, this Court concludes that genuine issues of fact exist regarding the medical care Segler received by EMSA while incarcerated at the Center. Such questions of fact weigh heavily on Segler's showing of deliberate indifference by the EMSA.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Emergency Medical Services Associates' Motion for Summary Judgment (Doc. # 53) is DENIED.