*719 Markman, J.
(dissenting). I respectfully dissent. The majority is reversing defendant’s conviction of first-degree murder on the ground that the trial court erred in admitting a statement that defendant made to Dean Heintzelman, defendant’s former neighbor and friend, who happens to volunteer as a part-time, reserve police officer. Specifically, the majority concludes that this admission violated defendant’s Sixth Amendment right to counsel. I strongly disagree. In my judgment, defendant’s Sixth Amendment right to counsel was not violated because, when Heintzelman spoke to defendant, he was acting as a friend, not as a police officer. Thus, there was no governmental action and, therefore, no violation of defendant’s Sixth Amendment right to counsel. Accordingly, I would affirm the judgment of the Court of Appeals.
I. FACTS AND PROCEDURAL HISTORY
Defendant was arrested and charged with first-degree murder. The police advised defendant of his Miranda[1] rights, and defendant told the police that he did not wish to answer any questions without his attorney present. While defendant was incarcerated awaiting trial, he requested a visit from his former neighbor and friend, Dean Heintzelman. Heintzelman owns an excavating company and in his spare time volunteers as a part-time, reserve officer.[2] According to Heintzelman, the visit began by defendant talking about and showing Heintzelman pictures of his son *720 and his son’s wife and baby.[3] At some point, Heintzelman asked defendant whether he committed the murder with which he was charged. Defendant did not answer. After further conversation, Heintzelman again asked defendant if he was involved in the murder. Defendant hung his head and said, “It was bad, Dean. It was bad.”
Defendant brought a motion to suppress Heintzelman’s testimony regarding this statement, alleging that the statement was obtained in violation of his Fifth Amendment right to be free from compelled self-incrimination and his Sixth Amendment right to counsel. The trial court denied defendant’s motion to suppress. Following a jury trial, defendant was convicted of first-degree murder. The Court of Appeals affirmed, concluding that, even if the admission of the statement was error, it was harmless error.[4] This Court then vacated the Court of Appeals judgment in part, concluding that, if there was error, the error was not harmless beyond a reasonable doubt.[5] On remand, the Court of Appeals again affirmed, concluding that the trial court did not abuse its discretion in admitting the statement.[6]
II. STANDARD OF REVIEW
Constitutional issues are reviewed de novo, while findings of fact are reviewed for clear error. People v *721 LeBlanc, 465 Mich 575, 579; 640 NW2d 246 (2002). “The decision whether to admit evidence is within the trial court’s discretion and will not be disturbed absent an abuse of that discretion.” People v McDaniel, 469 Mich 409, 412; 670 NW2d 659 (2003).
III. ANALYSIS
After a defendant has been indicted, his Sixth Amendment right to assistance of counsel attaches. Massiah v United States, 377 US 201, 206; 84 S Ct 1199; 12 L Ed 2d 246 (1964).[7] Accordingly, a defendant’s incriminating statements, deliberately elicited by governmental agents after the defendant has been indicted and in the absence of the defendant’s counsel, are not admissible at trial unless the defendant himself initiated the conversation concerning the investigation with the governmental agents. Michigan v Jackson, 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986). The Sixth Amendment right to counsel is broader than the Fifth Amendment right to counsel in the sense that the Sixth Amendment provides a right to counsel beyond custodial interrogations. Fellers v United States, 540 US _; 124 S Ct 1019; 157 L Ed 2d 1016 (2004).
However, “ [constitutional protections apply to governmental action only . . . .” Grand Rapids v Impens, 414 Mich 667, 673; 327 NW2d 278 (1982). Therefore, one acting as a private individual, rather than as a governmental actor, cannot violate an accused’s Sixth Amendment right to counsel. Further, merely because a person may, in some instances, be considered a *722 governmental actor, does not mean that this person is always a governmental actor. See Polk Co v Dodson, 454 US 312, 324-325; 102 S Ct 445; 70 L Ed 2d 509 (1981) (although a public defender is considered a state actor when performing some official duties, he is considered a private actor when he is representing a criminal defendant). Accordingly, not every act performed by an individual who happens to be a police officer constitutes state action. See, e.g., Barna v Perth Amboy, 42 F3d 809, 817 (CA 3, 1994) (an off-duty police officer who used his night stick in a fight was not a state actor); Bonsignore v City of New York, 683 F2d 635, 638-639 (CA 2, 1982) (an off-duty police officer’s use of a police revolver to shoot his wife was not state action); Delcambre v Delcambre, 635 F2d 407, 408 (CA 5, 1981) (an on-duty police officer’s assault of the plaintiff at a police station was not state action because it arose out of a personal dispute and the officer neither arrested nor threatened to arrest the plaintiff); United States v McGreevy, 652 F2d 849, 851 (CA 9, 1981) (a police officer who opened a package while working for Federal Express was not a state actor).[8]
*723 In United States v Gaddy, 894 F2d 1307 (CA 11, 1990), the defendant’s aunt, who happened to be a police officer, persuaded the defendant to confess to the police. The United States Court of Appeals for the Eleventh Circuit concluded that she was acting as the defendant’s aunt, not as a state actor, because she was not part of the investigative team on her nephew’s case, she was not directed by a superior to contact her nephew, there was no evidence that she was acting in the normal course of her duties when she initiated contact with her nephew, and she made no written report following her communication with her nephew.[9]
The facts of the instant case are similar, but even more compelling. Heintzelman was not acting in the normal course of his duties when he talked with defendant—his normal duties included transporting prisoners, not questioning them; Heintzelman’s duties as a part-time, reserve police officer were entirely noninvestigative in nature;[10] Heintzelman was not part *724 of the investigative team on defendant’s case;[11] Heintzelman was not directed by a superior or anyone else to contact defendant; Heintzelman was requested by defendant himself to speak with him; Heintzelman was not acting under the direction of the investigating police officers; Heintzelman was not acting in concert with the investigating police officers; Heintzelman asked no follow-up questions of defendant as would have any other minimally trained investigative officer; and Heintzelman made no written report following his conversation with defendant.[12]
The majority cites Griffin v Maryland, 378 US 130, 135; 84 S Ct 1770; 12 L Ed 2d 754 (1964), for the proposition that “[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action.” I agree that whether Heintzelman purported to act under state authority is the dis-positive question.
In Griffin, an amusement park employee identified himself as a deputy sheriff and ordered the petitioners to leave the amusement park. By identifying himself as a state officer and ordering the petitioners to leave the park, he clearly purported to act under state authority and, thus, his action was effectively state action.
*725 Unlike the officer in Griffin, Heintzelman did not purport to act under state authority. Rather, he purported to do nothing more than act as a friend. He came to see defendant at defendant’s request, he spoke to defendant about their families, and he asked defendant, as a friend might do when his friend has been accused of murder, what was going on. Further evidence that Heintzelman was acting as a friend, not as a police officer, is that when Heintzelman asked defendant if he was involved and defendant said, “Dean, it was bad,” rather than pressing defendant for further evidence of guilt, as anyone acting as a police officer would certainly do, he simply left. Heintzelman behaved, not as a police officer would, but as a disappointed friend would when confronted with an incriminating statement made by one’s Mend concerning a heinous murder.[13]
The majority’s conclusion that Heintzelman acted as a state actor when he spoke with defendant is based entirely on the fact that Heintzelman served as a part-time, reserve police officer, and that when he spoke with defendant it was late at night and he was wearing a police uniform. As explained above, not everything a police officer does, regardless of when it *726 is done and regardless of the circumstances under which it is done, constitutes state action. Not even everything a police officer, who happens to be uniformed, does constitutes state action. That Heintzelman happened to be wearing a uniform when he spoke with defendant does not transform Heintzelman’s personal actions into state actions.[14] Likewise, the fact that their conversation took place after normal visiting hours does not transform Heintzelman’s personal conversation with defendant into state action.[15]
Apparently, the majority would have no problem admitting defendant’s statement to Heintzelman if Heintzelman had first gone home, changed his clothes, and come back the next morning to speak with defendant. However, in my judgment, it is difficult to comprehend the significance the majority gives these factors in determining whether a jury will or will not have access to defendant’s statement.
*727 IV. CONCLUSION
The majority has concluded that someone who happens to have volunteered as a part-time, reserve police officer cannot ask a friend about a crime with which he has been charged without running afoul of the Sixth Amendment.[16] As a result, a clearly incriminating statement made about a brutal murder—a statement made voluntarily and fully in compliance with the requirements of Miranda v Arizona[17]—is to be excluded from the justice system. And defendant’s jury of peers—tasked with carrying out one of the gravest responsibilities of citizens in a democracy, determining the truth of a criminal charge—will be required to carry out this responsibility while being deprived of a compelling piece of evidence, freely given words from defendant’s own mouth.
When all the facts are considered, it is clear that Heintzelman spoke to defendant as a friend, not as a governmental actor and, thus, Heintzelman could not have violated defendant’s Sixth Amendment right to *728 counsel. Therefore, I would affirm the judgment of the Court of Appeals.
Weaver, J., concurred with Markman, J.

 Miranda v Arizona, 385 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

 When defendant initially requested this visit, he did not know that Heintzelman was a reserve police officer. However, Heintzelman had just finished transporting a prisoner before he came to visit defendant and, thus, was wearing his police uniform during his visit with defendant.

 An inmate who was present during this visit also testified that defendant and Heintzelman’s conversation began with defendant talking about his family.

 Unpublished opinion per curiam, issued January 12, 2001 (Docket No. 217052).

 465 Mich 874 (2001).

 Unpublished opinion per curiam, issued February 12, 2002 (Docket No. 217052).

 “In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of counsel for his defense.” US Const, Am VI. See also Const 1963, art 1, § 20.

 The majority observes that all the cases that I cite are distinguishable from the instant case. If, by this observation, the majority means that none of these cases involves a former neighbor and friend who happens also to be a part-time, volunteer, reserve police officer, then I agree. However, the majority has likewise failed to cite any case in support of its own conclusions that involves a former neighbor and Mend who happens also to be a part-time, volunteer, reserve police officer. The majority’s response to this dissent constitutes nothing more than a recognition that the circumstances of the instant case are unusual ones. What the cases that I cite do stand for is the proposition that not everything that a person who is a police officer does constitutes state action.
The majority further criticizes some of these cases on the ground that they address whether conduct constitutes state action for the purpose of 42 USC 1983, while the issue here is whether Heintzelman’s conduct constitutes state action for the purpose of the Sixth Amendment. However, *723 the United States Supreme Court has stated that, if conduct constitutes state action for the purpose of the Constitution, it necessarily constitutes state action for the purpose of § 1983. Brentwood Academy v Tennessee Secondary School Athletic Ass’n, 531 US 288, 295 n 2; 121 S Ct 924; 148 L Ed 2d 807 (2001). Contrary to the majority's contention, the United States Supreme Court has held that the opposite is also true. Nat'l Collegiate Athletic Ass’n v Tarkanian, 488 US 179, 182 n 4; 109 S Ct 454; 102 L Ed 2d 469 (1988) (“the under-color-of-law requirement of 42 U.S.C. § 1983 and the state-action requirement of the Fourteenth amendment are equivalent”).

 The Georgia Supreme Court looked at these same factors in concluding that the defendant’s father, who happened to be an FBI agent, acted as a father, not as a state actor, when he asked his son if he had shot the victim. Cook v Georgia, 270 Ga 820; 514 SE 2d 657 (1999).

 When asked what his duties as a reserve police officer included, Heintzelman responded: “I go on transport, transport prisoners. We take care of ball games, do security at ball games. We help with visitation at the jail. That sort of stuff.”

 Although, as the majority states, Heintzelman “was part of the police team present for the recovery of the victim’s body from defendant’s former residence,” ante at 714, he was there, not in any sort of investigative capacity, but simply as a volunteer to help guard the scene until the state police forensic team arrived.

 Although the prosecutor further asserted at oral argument that Heintzelman did not report anything about his conversation with defendant to the investigating officers until nearly a week after it occurred, I can find no confirmation of this fact in the record. However, the record is similarly bereft of evidence that this conversation was promptly reported to the investigating officers.

 The majority states that the fact that after Heintzelman was confronted with defendant’s incriminating statement, he “offered to obtain more information” from defendant evidences that Heintzelman was acting, not as a friend, but as a state actor when he spoke with defendant. Ante at 713. If Heintzelman had, in fact, spoken with defendant as he offered to do, this would certainly be relevant in determining whether the subsequent conversation with defendant constituted state action. However, the fact that Heintzelman, after being confronted with defendant’s incriminating statement, decided that he would be willing to speak to defendant in order to help the investigating officers, sheds no light on whether Heintzelman went to see defendant in the first place as a governmental agent or as a friend. Indeed, if anything, Heintzelman’s offer of future assistance to the officers implies that his initial conversation with defendant had a different purpose.

 Heintzelman was wearing a uniform, not because he was attempting to intimidate defendant, or to communicate his public authority, but because he came to visit defendant at defendant’s request at a time when he happened to be in uniform.

 Heintzelman visited defendant at around 11:00 p.m., not because he was attempting to catch defendant off guard, but because he happened to be at the jail where defendant was incarcerated at that time since he had just finished transporting a prisoner there. The majority states that the fact that their conversation took place so late is relevant because only governmental agents would have had access to defendant at that time of night. However, that this conversation took place several hours before or after normal visiting hours does not transform this private conversation into state action. That the police officer in Barna only had access to a police-issued night stick because he was a police officer, did not make his use of this night stick in a fight state action, just as the fact that the officer in Bonsignore only had access to a police-issued revolver because he was a police officer did not make his use of this revolver to shoot his wife state action.

 The majority rejects this characterization of its holding, and replies that it is merely concluding that a part-time, reserve police officer can never ask a friend about a crime only while acting as a state actor. Of course, such a reply is a mere tautology since the very issue before this Court is whether Heintzelman was a state actor. The majority’s references to Edwards and Bradshaw are similarly circular. To repeat, under the majority’s analysis, a part-time, reserve police officer would not be able to ask a friend about a crime with which he has been charged without running afoul of the Sixth Amendment.

 By stating that there was no Miranda violation, I am not implying that compliance with Miranda was required. Indeed, for the same reason that I conclude that defendant’s Sixth Amendment right to counsel was not violated—there was simply no state action—I would also conclude that his Fifth Amendment right was not violated. The reference to Miranda is simply to underscore the utter lack of coercion surrounding the statement that the majority is suppressing.